In the

# United States District Court

# for the District of Maryland

## No. 11-cv-0440

### ANGELA SCHNEIDER

*Plaintiff*

vs.

### ED'S MARINE SUPERSTORE, *et al.*

*Defendants*

## PLAINTIFF'S OMNIBUS OPPOSITION
## TO PENDING DEFENSE MOTIONS

***Charles H. Edwards IV***
Law Office of Barry R. Glazer, P.C.
1010 Light Street
Baltimore, Maryland 21230
charles.edwards@robinhoodlawyers.com
phone: (410) 547-8568
fax: (410) 547-0036
bar number: 29977
*Attorney for the Plaintiff*

Now comes Angela Schneider, by and through her attorneys, Charles H. Edwards IV and The Law Office of Barry R. Glazer, P.C., and hereby files this Omnibus Opposition to the Pending Defense Motions for the reasons set forth below, and set forth more fully in the accompanying supporting Memorandum of Law:

1.      Material issues of fact exist as to the circumstances of the occurrence underlying this litigation, precluding summary judgment as a matter of law;

2.      Plaintiff's Rule 56.1 Statement of Material Facts and Facts in Dispute indisputably demonstrates that there are, at a minimum, genuine issues of material fact concerning the Defendants' liability.

3.      The Defendants have not met their burden of proof on their motions for summary judgment nor have they established their alleged lack of culpability.

4.      The vast majority of  the Plaintiff's claims are typically decided by juries, not judges, and the Defendants have manifestly failed to identify any reason why this case should be an exception to this rule.

5.      A motion for summary judgment must be evaluated with all inferences construed in favor of the non-moving party; for reasons set forth fully in the accompanying Memorandum of Law, such inferences, when properly drawn in light of the disputed and undisputed facts, preclude summary judgment as a matter of law.

**WHEREFORE**, the Plaintiff, Angela Schneider, respectfully requests that the Defendants' Motion for Summary Judgment hereby be denied.

Respectfully submitted,

May 18, 2015                                                           /s/

_____
***Charles H. Edwards IV***
Law Office of Barry R. Glazer, P.C.
1010 Light Street
Baltimore, Maryland 21230
charles.edwards@robinhoodlawyers.com
phone: (410) 547-8568 fax: (410) 547-0036
bar number: 29977
*Attorney for the Plaintiff*

*INTENTIONALLY BLANK*

In the

# United States District Court

# for the District of Maryland

## No. 11-cv-0440

### ANGELA SCHNEIDER

*Plaintiff*

vs.

### ED'S MARINE SUPERSTORE, *et al.*

*Defendants*

## PLAINTIFF'S OMNIBUS MEMORANDUM IN OPPOSITION TO PENDING DEFENSE MOTIONS

*Charles H. Edwards IV*
Law Office of Barry R. Glazer, P.C.
1010 Light Street
Baltimore, Maryland 21230
charles.edwards@robinhoodlawyers.com
phone: (410) 547-8568
fax: (410) 547-0036
bar number: 29977
*Attorney for the Plaintiff*

I.      **INTRODUCTION AND RELIEF SOUGHT**

The Plaintiff, Angela Schneider, by and through her attorneys, Charles H. Edwards IV and the Law Office of Barry R. Glazer, P.C., and pursuant to Fed. R. Civ. P. 56, Local Rule 105, and the Court's May 8, 2015, Order, hereby respectfully submits her Memorandum in Opposition to the Pending Defense Motions. For the reasons set forth in detail below, the defense motions currently pending before this Court should be denied in their entirety, and the Plaintiff should be granted such other relief as the Court finds just and proper under the circumstances.

II.     **STATEMENT OF MATERIAL FACTS AND FACTS IN DISPUTE**

A.      **THE BOAT EXHIBIT**

It is undisputed that the occurrence at issue in this case took place at the Baltimore Convention Center, located at One West Pratt Street, Baltimore, Maryland 21201 (*hereinafter*, the "Convention Center").[1] It is also undisputed that at all times relevant to this case, Defendant National Marine Manufacturers Association (*hereinafter*, "NMMA") had rented out the Convention Center for its annual Progressive Insurance Baltimore Boat Show (*hereinafter*, the "Boat Show").[2] In this regard, NMMA provided an area for boat retailers to display their boats to the general public for retail sale.[3]

It is undisputed that one of the exhibitors at the Boat Show was Defendant Ed's Marine Superstore, Inc. (*hereinafter*, "Ed's Superstore").[4] At all times relevant to this case, Ed's Superstore rented 3,600 square feet of showroom space from NMMA at the back of the Convention Center to display a variety of boats that it was offering for sale.[5,6] These boats included, but were not limited to, boats manufactured by Sea Hunt, Carolina Skiff, Alumacraft, South Bay, and May-Craft (*hereinafter*, the "Exhibit").[7] Also, at all times relevant to this case, Ed's Superstore utilized stairs from Todd's Marine Products (*hereinafter*, "Todd's Stairs") for visitors boarding boats.[8]

Contrary, however, to the claims and representations in numerous sections of the pending defense motions, there is no confusion or dispute about which boat the Plaintiff was attempting to board when she sustained serious injuries. Ed's Superstore has expressly stated under oath that "the boat on which [the] Plaintiff alleges…she was injured…[was] a Victory 225LE Seahunt."[9] Additionally, Ed's Superstore's Answers to Interrogatories  directs the Plaintiff to see "previously produced photographs and documents"

---

[1] *See* Angela Schneider's Answers to Interrogatories at Answer No. 8, attached hereto as Exhibit A.

[2] *Id.*

[3] *Id.*

[4] *See* Exhibitor Application for Space, attached hereto as Exhibit B.

[5] *Id.*

[6] *See* Exhibit Hall Map, attached hereto as Exhibit C.

[7]  Exhibit B.

[8] *See* Ed's Superstore's Answers to Interrogatories at Answer No. 9, attached hereto as Exhibit D.

[9] *Id.*

for pictures of the boat the Plaintiff was boarding when she was seriously injured, a Victory 225LE Seahunt (*hereinafter,* the "Subject Boat"). At all times relevant to this case, Ed's Superstore claims that the Exhibit, including the Subject Boat, was inspected "prior to the [Boat Show's] start on each day."[10] Importantly, however, there has been no claim by either of the Defendants that they inspected the Exhibit, including the Subject Boat, at any time other than "prior to the [Boat Show's] start on each day." And, just as importantly, if not more so, neither Defendant has made any claim that the Exhibit was inspected at all on the date of the occurrence that underlies this case, only a statement about inspections, generally.

### B.   PROFESSIONAL ERGONOMICS EXPERT ASSESSMENT REPORT

The Plaintiff has designated Leighton L. Smith, Ph.D., P.E., CPE as her expert witness. Mr. Smith has opined as a professional having specific knowledge in engineering with an emphasis on human factors and ergonomics. Mr. Smith's qualifications include, but are not limited to, holding a Doctor of Philosophy and Master of Science Degree in industrial engineering with an emphasis on human factors, engineering, and ergonomics.[11] Mr. Smith is a licensed professional engineer and is a certified professional ergonomist.[12]

Mr. Smith's report provides a professional ergonomics (*i.e.*, human usability) expert opinion regarding public use and access at the Boat Show and the causation of the Plaintiff's injuries that underlie this case.[13] At the outset, Mr. Smith notes and it is undisputed by the Defendants that the route they designed and installed for consumers to the Subject Boat is no longer in place.[14] Thus, as is often the unfortunate reality in premises liability cases, especially where the Defendants made no efforts at preservation despite being on actual notice that the Plaintiff sustained serious injuries while attempting to board the Subject Boat, the Plaintiff's expert, Mr. Smith, had to base his expert opinion on the evidence that is in existence and had not been destroyed. This evidence included, but was not limited to, the Plaintiff's Complaint, filed in the United States District Court on April 3, 2014, photographs taken by the Plaintiff's family at the time of the occurrence, the Ed's Superstore Incident Report, the Defendants' Answers to the Plaintiff's Interrogatories, exhibitor documents, schematic information on Todd's Stairs, schematic information on  the Subject Boat, and additional photographs of static display boats similar to the Subject Boat on the dates and at the location of the Boat Show.[15]

Mr. Smith's Professional Ergonomics Expert Assessment Report expressly states that the Boat Show was an event that was open to the public and was advertised in such a fashion that attendees were enticed to attend in order to "See and Board" the boats on display.[16] As such, according to Mr. Smith's

---

[10] *Id.* at Answer No. 7.

[11] *See* Professional Ergonomics Expert Assessment Report at pg. 9, attached hereto as Exhibit E.

[12] *Id.*

[13] *Id.*  at pg. 1.

[14] *Id.*

[15] *Id.*

[16] *Id.*

Report, in addition to complying with national, state, and local laws, ordinances, and public use regulations NMMA and each individual exhibitor, including Ed's Superstore, and their agents, servants, and employees, had an incumbent responsibility to provide an event venue that complied with the national standard of care for public use.[17]

In Mr. Smith's expert opinion, the Boat Show, through its advertisements and other promotions, sent the general public an open invitation to "browse, inspect, and have physical contact, as in being able to board the boats on display and look around inside them."[18] In order to do this, states Mr. Smith, in accordance with the national standard of care, NMMA and the individual exhibitors, including Ed's Superstore, assumed incumbent responsibilities to ensure that the public attendees at the Boat Show would have clear, full, and safe access the Boat Show arena, as well as have easy, uncomplicated, and hazard-free access to all products and other facilities inside the arena.[19] Specifically, according to Mr. Smith, the the open access to the products on display, such as boats, had to be such that people of all sizes, ages, and abilities and in any form of clothing and footwear would be able to view and physically interact with the displays, particularly the boats, including the Subject Boat, without the need for special equipment, clothing, tools, supervision, or training.[20]

Mr. Smith adds in his Report that in accordance with the national standard of care for public use and access, if there were any circumstances at the Boat Show that would require special warnings, treatments, or procedures in order for an interested person to view or physically interact with a display item, the organizations responsible for the display,  NMMA and Ed's Superstore, would first be compelled to not exhibit the item at the Boat Show or to take specific, proven, and comprehensive preventative measures to ensure that any and all persons coming in contact with the item are able to encounter and interact with the display without any risk of hazard to the person's health, physical condition, or livelihood.[21] Additionally, Mr. Smith notes that many consumers visiting the Boat Show would not be expected to have specific or relevant experience with boats in general nor any skill or expertise in boarding boats or how to comport themselves while on or near boats and the apparatuses being used to exhibit the boats at the Boat Show.[22] The open access to products on display, such as boats, had to be such that people of all sizes, ages, and abilities and in any form of clothing and footwear they chose to use when in attendance would be able to view and physically interact with the Boat Show's displays, particularly the boats, including the Subject Boat, without the need of special equipment, clothing, tools, supervision, or training.[23]

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at pg. 2.

[21] *Id.*

[22] *Id.*

[23] *Id.* at pg. 2.

Thereafter, Mr. Smith made the following specific findings as they relate to the Defendants' liability in this case:

- NMMA and Ed's Superstore collectively assumed the full responsibility for protecting visitors from harm or hazard.[24]

- NMMA and Ed's Superstore openly endorsed that public attendees at the Boat Show would have clear, full, and safe access to the Boat Show arena, as well as have easy, uncomplicated, and hazard-free access to all products and other facilities inside the arena.[25]

- The condition of Todd's Steps not being high enough (*i.e.*, large enough with enough steps) to rise a person up to a point of height whereby one could then safely take the last step in the upward sequence and end up on the stern portion of the Subject Boat, is a critical oversight in terms of the incumbent responsibilities of NMMA and Ed's Superstore to provide a safe and hazard-free environment at the Boat Show.[26]

- Once having taken the last step to move from the top of Todd's Steps onto the stern portion of the boat, a person would then find herself on a narrow edge, several feet up in the air, without any means of support or stabilization in order to proceed further onto the Subject Boat, a maneuver at this point constituting another step up over a large rise at the back of the Subject Boat with a relatively steep step downward on the Subject Boat's rear area.[27]

- Ed's Superstore, with the explicit responsibility to provide visitors safe and hazard-free access to the Subject Boat, did not provide additional support at the stern portion of the boat to help stabilize and balance visitors either stepping off the steps onto the Subject Boat or stepping on them when exiting the Subject Boat.[28]

- Ed's Superstore did not provide any employees or attendants inside the Subject Boat to watch, guide, assist, advise, warn, or otherwise ensure safe and unencumbered access to the Subject Boat, nor any similar people to ensure safe and stable use of the set of steps outside the Subject Boat, both ascending and descending.[29]

Based on these specific findings as to the Defendants' liability in this case based on Mr. Smith's professional and expert opinion as an engineer specializing in human factors and ergonomics,

> **The situation described herein that was present and evident at the [E]xhibit on the day of [the Plaintiff'] incident was the principal [and] proximate cause of her losing her balance and falling.**[30]

---

[24] *Id.*

[25] *Id,* at pgs. 1,2.

[26] *Id.* at pg. 4.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at pgs. 4,5 (emphasis added).

### C.    FACTS SPECIFIC TO THE PLAINTIFF AND HER INJURY

On March 2, 2013, while at the Boat Show, and after boarding and experiencing  five or six other exhibitors' boats, the Plaintiff and her family (*hereinafter*, the "Family") arrived at the Subject Boat.[31] While the Subject Boat was set up to induce the Family and other Boat Show attendees to board the Subject Boat and there were other Boat Show attendees that had previously boarded the Subject Boat, there were no NMMA or Ed's Superstore agents, servants, or employees present to aid or instruct Boat Show attendees how to safely board the Subject Boat, offer assistance boarding the Subject Boat, or to answer any questions from convention attendees.[32]

The Plaintiff climbed Todd's Stairs, which were positioned against the back left underside of the Subject Boat and was in the process of viewing and boarding the Subject Boat when she was caused to slip and fall, severely injuring her body and limbs, which necessitated surgical intervention and correction.[33] At the time of the Plaintiff's fall, it is undisputed that she had stepped off Todd's Stairs onto the Subject Boat and that there wad a slippery surface. However, as discussed more fully hereinafter, there is not one scintilla of evidence in the record that the slippery surface was caused or exacerbated by the presence of any liquid on any of the surfaces designed and installed by the Defendants for Boat Show attendees to board the Subject Boat.

Immediately following the Plaintiff's fall, her husband, Mark Schneider, screamed for help, as the Plaintiff was agonizing in pain, but no agents, servants, or employees from NMMA or Ed's Superstore ever came to their aid.[34] After a considerable amount of time, an unknown Convention Center employee approached the Plaintiff's husband and stated that he was a paramedic for the Convention Center, but that he could not provide assistance to the Plaintiff.[35] Eventually, another Convention Center employee unknown to the Plaintiff appeared, stating that the paramedics would arrive shortly.

---

[31] Exhibit A at Answer No. 8.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

## III.    ARGUMENT

The Plaintiff's Omnibus Memorandum in Opposition to Pending Defense Motions concerns the motions for summary judgment filed by both of the Defendants. In their motions, the Defendants have asserted that they are entitled to summary judgment on a variety of grounds. In particular, the Defendants' argue that a grant of summary judgment in their favor is appropriate due to the fact that the Plaintiff cannot establish that either Defendant was a "cause in fact" of her injuries. Similarly, the Defendants assert that the Plaintiff cannot establish that either Defendant was a "legally cognisable" cause of her injuries. Further, the Defendants argue that they were not on notice of any dangerous or hazardous conditions and, nevertheless, that the Plaintiff was contributorily negligent to and assumed the risk of her injuries. Lastly, the Defendants argue that summary judgment should be entered in their favor because the Plaintiff's liability expert, Mr. Smith, limits his professional opinion to the Defendants' use of Todd's Stairs in the route the Defendants designed and created for Boat Show attendees to board the Subject Boat.

An examination of the well-established summary judgment standard indicates that the Plaintiff has adduced a genuine issue of material fact as to each and every one of the contentions made by the Defendants in their respective motions for summary judgment. Moreover, neither of the Defendants are entitled to judgment as a matter of law.[36] Accordingly, the Defendants' pending motions for summary judgment should be denied in their entirety.

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[37] Once the moving party has met its initial burden under the summary judgment standard, the non-moving party must come forward in response with specific facts demonstrating a genuine issue for trial.[38] A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[39]

In considering a motion for summary judgment, the Court must view the facts in a light most favorable to the party opposing the motion.[40] "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."[41] Indeed, summary judgment is appropriate only in instances "[w]here the record taken as a whole *could not lead a*

---

[36] *See* Fed. R. Civ. P. 56(c).

[37] *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

[38] *Id.* at 323.

[39] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[40] *Austin v. Clark Equip. Co.,* 48 F.3d 833, 835 (4th Cir. 1995).

[41] *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

*rational trier of fact to find for the non-moving party....*"[42] While "the non-moving party must do more than present a "scintilla" of evidence in its favor," if the evidence is more than "merely colorable" or is otherwise "significantly probative," summary judgment is not appropriate, and the case is properly submitted to the jury for consideration.[43]

"A plaintiffs evidence is legally sufficient to warrant submission of a case to the jury if it rises above speculation or conjecture, and so affords the rational basis needed for a determination that the defendant was guilty of negligence which produced the accident."[44]

As discussed in detail below, a wide array of material facts surrounding the happening of the occurrence at issue in this case remain in genuine dispute. Moreover, neither of the Defendants is entitled to judgment as a matter of law on the claims raised in their motions for summary judgment. Accordingly, for the reasons set forth below, both of the pending motions for summary judgment should be denied in their entirety.

**B.    GENERAL CONCEPTS OF NEGLIGENCE UNDER MARYLAND LAW**

As a general proposition under Maryland law, "[t]o state a cause of action in negligence, a plaintiff must allege that the defendant had a duty of care which he breached, and that the breach proximately caused legally cognizable injury."[45] With regard to the duty prong of the negligence analysis, the concept of legal duty "emanates from the responsibility each of us bears to avoid unreasonable risks of harm to others.[46] "When a reasonable person knows or should have known that certain types of conduct constitute an unreasonable risk of harm to another, he or she has a duty to refrain from that conduct."[47] "An important factor used to determine the existence of a duty is foreseeability."[48] "The seriousness of potential harm, as well as its probability, contributes to duty to prevent it."[49] "Whether unreasonable risk exists in a given situation depends on balancing the probability and seriousness of harm, if care is not exercised, against the costs of taking appropriate cautions."[50]

---

[42] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotations omitted) (emphasis added).

[43] *Sylvia Dev. Corp. v. Calvert Cnty, Md.,* 48 F.3d 810, 818 (4th Cir. 1995), *quoting, Anderson,* 477 U.S. at 249-50, 252.

[44] *Myers v. TGI Friday's, Inc.,* 2007 WL 4097498 at *5 (D. Md. Nov. 9, 2007), *Friday's, Inc.,* 2007 WL 4097498 at *5 (D. Md. Nov. 9, 2007), *quoting, Moulden v. Greenbelt Consumer Servs., Inc.,* 210 A.2d 724, 726 (Md. 1965).

[45] *Faya v. Almaraz,* 620 A.2d 327, 333 (Md. 1993).

[46] *Id., quoting, Moran v. Faberge,* 332 A.2d. 11, 15 (Md. 1975).

[47] *McCance v. Lindau,* 492 A.2d 1352, 1358 (Md. App. 1985).

[48] *B.N. v. K.K.,* 538 A.2d 1175, 1178 (Md. 1988).

[49] *Faya,* 620 A.2d at 333.

[50] *Moran,* 332 A.2d at 15; *see also Faya,* 620 A.2d at 333. ("While it may be unlikely that an infected doctor will transmit the AIDS virus to a patient during surgery, the patient will almost surely die if the virus is transmitted.")

Additionally, as asserted by the Defendants and echoed herein by the Plaintiff, in the context of a claim arising out of premises liability, "the standard of care owed by [an occupier] of land depends upon the status of the person on the land; *i.e.* whether he is an invitee, licensee, or trespasser."[51,52] An invitee is defined as "a person invited or permitted to enter or remain on another's property for purposes connected with or related to business."[53,54] Invitees are protected at a level commensurate with the highest duty under the law.[55] As such, the occupier of land owes an invitee the duty "to keep [the] premises safe for the invitee and to protect [the invitee] from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for [the invitee's] own safety will not discover."[56] However, such occupier of land is not considered to be the insurer of the safety of its invitees when they are on the premises and no presumption of negligence on the part of the occupier arises merely from a showing that an injury was sustained on the premises.[57] As such, in order to make a *prima facie* case of negligence, the invitee bears the burden of showing that the proprietor created the dangerous condition or had actual or constructive notice of its existence.[58] Further, liability for harm attaches against the occupier of property if it should expect that invitees will not discover the dangerous condition, or will fail to protect themselves against it, and the occupier invites entry upon the property without making the condition safe or giving a warning.[59] "The duties of a business inviter thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers."[60] On the other hand, the "occupier of land ordinarily has no duty to warn an invitee of an open, obvious, and present danger."[61]

---

[51] *Rowley v. Mayor of Baltimore,* 505 A.2d 494, 498 (Md. 1986).

[52] In discussing the Plaintiff's duties while at the Boat Show, the Defendants concede that the Plaintiff was a business invitee, citing *Tennant v. Shoppers Food Warehouse Md.* Corp., 115 Md. App. 381, 389 (1997), for the proposition that "A business invitee must exercise ordinary care for his or her own safety…This includes the duty to look and see what is around the invitee." CM/ECF Document No. 24 at pg. 23.

[53] In this case, the status of Mrs. Renauer at the time of the occurrence at issue has not been challenged by the Defendants. There is no dispute that she and her husband and their two (2) grandchildren were invitees onto the premises of Defendant Discovery Creek Children's Museum. *See* Discovery Creek's Motion for Summary Judgment at p. 8.

[54] *Id.*

[55] *Deboy v. City of Crisfield,* 893 A.2d 1189, 1193 (Md. App. 2006).

[56] *Id., citing, Rowley,* 505 A.2d at 498; *see also TGI Friday's, Inc.,* 2007 WL 4097498 at *4; *Richardson v. Nwadiuko,* 966 A.2d 972, 977 (Md. App. 2009).

[57] *Moulden,* 210 A.2d at 725; *see also Rehn v. Westfield America,* 837 A.2d 981, 984 (Md. App. 2003).

[58] *TGI Friday's, Inc.,TGI Friday's, Inc.,* 2007 WL 4097498 at *4, *quoting, Lexington Mkt. Auth. v. Zappala,* 197 A. 2d 147, 148 (Md. 1964) (internal quotation omitted).

[59] *See Honolulu Ltd. v. Cain,* 224 A.2d 433, 436 (Md. 1966); *Mondawmin Corp. v. Kres,* 266 A.2d 8, 12-13 (Md. 1970); *Rawls v. Hochschild, Kohn & Co.,* 113 A.2d 405, 408 (1955).

[60] *Tennant v. Shoppers Food Warehouse Md. Corp.,* 693 A.2d 370, 388 (Md. App. 1997).

[61] *Id.* at 374.

With regard to the negligence claims brought against both of the Defendants in this case, the Plaintiff has established a genuine issue of material fact as to the existence of each of the requisite elements of her causes of action. In light of such disputes of fact, both of the Defendants' motions for summary judgment should be denied in their entirety.

### C.   THE DEFENDANTS HAD NOTICE OF THE HAZARDS AT ISSUE

At the outset, it can hardly be disputed that  both NMMA and Ed's Superstore created the hazards at issue in this case. As indicated in the *TGI Friday's Friday's* case, in determining whether a defendant created a hazard causing injury, the plaintiff "must show how the condition was brought to the place where the plaintiff was injured."[62] In this case, the answer to the question posed by the *TGI Friday's* case is obvious; NMMA and Ed's Superstore brought the Exhibit, including the Subject Boat, to the Convention Center; NMMA through its specifications for   setting up exhibits and its inspections and certification that the exhibits, including the Subject Boat and the route the Defendants designed and installed for Boat Show attendees to board the Subject Boat, comply with NMMA's rules and regulations and Ed's Superstore through its design and installation of the Exhibit, including the Subject Boat and the method of boarding the Subject Boat. Such actions on the part of the Defendants are more than sufficient to charge them with notice of the risks associated with the creation of a hazard causing injury. The Defendants' motions for summary judgment should be denied on this ground.[63]

The Defendants are also chargeable with constructive notice of the hazards created by the configuration of the route for ingress and egress to the Subject Boat. "A business invitor is deemed to have constructive notice of a hazardous condition on the premises when it appears that they could have discovered the condition by the exercise of ordinary care."[64] "Whether they were reasonable in failing to discover a hazardous condition is a question of fact, which requires a consideration of the nature of the condition, its foreseeable consequences, the means and opportunities of discovering it, the diligence required to discover and correct it, and the foresight which a person of ordinary prudence would have exercised under similar circumstances."[65]

The Defendants' lax attitude toward the safety of consumers wishing to board the Subject Boat is apparent throughout their motions for summary judgment. Had the Defendants taken the minimal steps to comply with the national, state, and local laws, ordinances and public use regulations, including the national standard of care, consumers would have had easy, uncomplicated, and hazard-free access to all

---

[62] *Id.,* 2007 WL 4097498 at * 4; *see also Mondawmin Corp., Corp.,* 266 A.2d at 13 (finding notice through the creation of a hazard when jets from an ornamental fountain sprayed water onto a set of steps in a shopping mall).

[63] Although mentioned in this section for purposes of completeness, it should be noted that Merrifield has not alleged in its motion that it is entitled to summary judgment on the simple negligence claim brought against it on the ground that it did not have notice of the hazard associated with the slide at issue.

[64] Konka v. Wal-Mart Stores, Inc., 1998 WL 24378 at *3 (4th Cir. Jan. 26, 1998), quoting, Rawls, 113 A.2d at 409 (internal quotation omitted).

[65] Konka., 1998 WL 24378 at *3, quoting, Rawls, 113 A.2d at 410 (internal quotation omitted).

products and other facilities inside the Boat Show.[66] "Specifically, the open access to products on display, such as boats, had to be such that people of all sizes, ages, and abilities and in any form of clothing and footwear they chose to use when in attendance would be able to view and physically interact with the Boat Show's displays, particularly the boats, without the need of special equipment, clothing, tools…or training."[67] In accordance with the national standard of care for public use and access, if there were any circumstances at the Boat Show that would require special warnings, treatments, or procedures, in order for a person to physically interact with a display item, the organizers responsible for the display would first be compelled to not exhibit the item at the Boat Show or to take specific, proven, and comprehensive preventative measures to ensure that any or all persons coming in contact with the item are able to encounter and interact with the display without any possibility of hazard to the person's health, physical condition, or livelihood.[68] In addition physical impediments to consumer's safe passage onto the Subject Boat, the Defendants were required to but "did not provide any employees or attendants inside the boat to watch, guide, assist, advise, warn, or otherwise ensure safe and unencumbered access to the boat, nor any similar people to ensure safe and stable use of the set of steps outside the boat, both ascending and descending."[69] The absence of any employees or attendants becomes extremely important against the backdrop of the Defendants argument that the Plaintiff cannot prove that the Defendants had notice of an alleged slippery or wet surface.

To be certain, had the Defendants had employees or attendants posted to ensure consumer's safe passage onto the Subject Boat as required, they would have discovered not only the physical impediments to consumer's safe passage, personally and by observing other Boat Show attendees navigate the route the Defendants designed and installed for Boat Show attendees to board the Subject Boat and/or a slippery or wet surface. To that end, as to the Defendants' arguments that there was a wet surface, the Defendants concede that while multiple people have testified that the Subject Boat's surfaces were slippery, there is no testimony that the surfaces were wet.[70]   Additionally, the Defendants' argument that it was snowing when the Plaintiff entered the Convention Center and that she should have somehow correspondingly been aware that there were going to be wet surfaces not only is logically disjointed because the presence of snow outside the Convention Center when the Plaintiff arrived does not trigger a presumption that an hour later the Subject Boat or the installed route to board the Subject Boat would be wet. Moreover, such a claim by the Defendants demonstrates not that the Plaintiff should have been aware of slippery surfaces, but rather that the Defendants, who had expertise with boats and boat shows should have at the very

---

[66] Exhibit E at 1,2.

[67] *Id.* at 2.

[68] *Id.*

[69] *Id.* at 4.

[70] CM/ECF Document 24 at pgs. 8,9.

minimum had constructive notice of slippery surfaces on the Subject Boat if they had exercised ordinary care.

It simply is not sufficient for purposes of summary judgment for the Defendants to turn a blind eye and plead ignorance of any risk whatsoever associated with the route they designed and installed for consumers to board the Subject Boat. This is  particularly so where, as here, the Defendants were required to have an employee or attendant present to assist consumers attempting to board the Subject Boat that would have, at a very minimum, in the exercise of ordinary care, have been aware of any slippery surfaces and been able to assist the Plaintiff and other Boat Show attendees out of harm's way. It is for a jury to decide whether the Defendants should have known of the hazards associated with the route the Defendants designed and installed for Boat Show attendees to board the Subject Boat and whether in the exercise of ordinary care the employees or representatives the Defendants were required to have assisting consumers onto the Subject Boat would have known about or or would have been deemed to have known about any slippery surfaces on the Subject Boat. A stark issue of material fact exists as to the constructive notice issue presented in this case, and the Defendants' motions for summary judgment should be denied on this basis in their entirety.

    **D.**    **THE ACTIONS OF THE DEFENDANTS WERE THE PROXIMATE CAUSE OF THE PLAINTIFF'S INJURIES.**

Both Defendants to this action, NMMA and Ed's Superstore, have filed a motion for summary judgment arguing that the Plaintiff has failed to demonstrate that their actions were a proximate cause of this accident. As indicated below, the Plaintiff has adduced sufficient evidence in the course of discovery to create a genuine issue of material fact as to whether each of the breaches of the standard of care owed to the Plaintiff committed by the Defendants was a proximate cause of the Plaintiff's injuries. Accordingly, the Defendants are not entitled to a grant of summary judgment in their favor.

    **1.**    **Principals of Causation**

"[A] plaintiff may recover only those damages that are affirmatively proved with reasonable certainty to have resulted as the natural, proximate and direct effect of the tortious misconduct."[71] "Where the conduct of a defendant was a substantial factor in bringing about the suffering of an injury, such conduct will be deemed to have 'caused' the injury."[72] As this Court noted in *Young v. U.S.*,

> [i]mportantly, negligence that qualifies as a proximate cause of an injury need not be the sole cause. Rather, an injury may have more than one "proximate cause." Thus, the causation element requires plaintiff to establish not that defendant's negligence was the sole cause of plaintiffs damages, but that there is a reasonable connection between defendant's negligence and plaintiffs damages.[73]

---

[71] *Jones v. Malinowski,* 473 A.2d 429, 435 (Md. 1984).

[72] *Bartholomee v. Casey,* 651 A.2d 908, 918 (Md. App. 1995).

[73] *Young v. U.S.,* 667 F.Supp. 2d 554 (D. Md. 2009),

> To be reasonably connected to plaintiffs damages and thus satisfy the causation element, defendant's negligence must be both a cause in fact of the injury and a legally cognizable cause. "Cause in fact" concerns whether defendant's negligent conduct actually produced an injury. *Id.* "Legal causation," in contrast, is "a policy-oriented doctrine designed to be a method for limiting liability after cause-in-fact has been established."[74]

Magistrate Judge Gauvey went on to explain:

> Maryland courts employ two tests in determining whether a negligent act is a cause in fact: the "but for" test and the "substantial factor" test. The threshold "but for" test examines injury that would not have occurred absent defendant's negligent conduct. However, only where defendant's conduct was a "substantial factor" in bringing about plaintiffs injury will such conduct qualify as an injury's cause. The "substantial factor" test examines, among other things, (a) the number and effect of other factors that contributed to the harm; (b) whether defendant's conduct created a harmless situation unless and until other forces intervened; and (c) any lapse of time between defendant's negligence and plaintiffs injury.[75]

However, "[r]egardless of the test employed, the focus remains on the fundamental and sometimes metaphysical inquiry into the nexus between the defendant's negligent act and the resultant harm to the plaintiff."[76] As the Court of Special Appeals noted in *Yonce,*

> There is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion. Nor, despite the manifold attempts which have been made to clarify the subject, is there yet any general agreement as to the best approach. Much of this confusion is due to the fact that no one problem is involved, but a number of different problems, which are not distinguished clearly, and that language appropriate to a discussion of one is carried over to cast a shadow upon the others.[77]

Indeed, the question of proximate cause "is a concept that possesses a chameleon-like ability to defy precise categorization, and must be analyzed on a case-by-case basis."[78]" Accordingly, the test of the sufficiency of the evidence to take the question of causal relationship to the jury is 'reasonable

---

[74] *Id.* at 561 (internal citations omitted); *see also Pittway Corp. v. Collins,* 973 A.2d 771, 786 (Md. 2009).

[75] *Young,* 667 F.Supp. 2d at 562; *see also Sindler v. Litman,* 887 A.2d 97, 110 (2005) (commenting that the "substantial factor" test supplements the "but for" test to "resolve situations in which two independent causes concur to bring about an injury, and either standing alone would have wrought the identical harm"); *Yonce v. Smithkline Beecham Clinical Laboratories, Inc.,* 680 A.2d 569, 576, *cert. denied,* 685 A.2d 452 (1996).

[76] *Id.*

[77] *Id.* at 575, *quoting,* Prosser & Keaton on the Law of Torts § 41, at 26 (5th ed. 1984).

[78] *Yonce,* 680 A.2d at 575.

probability[.]"[79] This test is met "when there is more evidence in favor of a proposition than against it (a greater than 50% chance that a future consequence will occur)."[80]

"Once causation-in-fact is established...the proximate cause inquiry turns to whether the defendant's negligent actions constitute a legally cognizable cause of the complainant's injuries. This part of the causation analysis requires us to consider whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected. Legal causation is a policy-oriented doctrine designed to be a method for limiting liability after cause-in-fact has been established. The question of legal causation most often involves a determination of whether the injuries were a foreseeable result of the negligent conduct."[81]

"While proximate cause-both cause-in-fact and legal cause-analysis is reserved for the trier of fact it becomes a question of law in cases where reasoning minds cannot differ. It is well established that, unless the facts admit of but one inference the determination of proximate cause is for the jury."[82]

In light of the foregoing standard, it is clear that the Plaintiff has adduced a genuine issue of material fact as to whether the actions of the Defendants, and each Defendant individually, was a proximate cause of the Plaintiff's injuries. As a result of the existence of such issues of material fact, each Defendant's motion for summary judgment should be denied as to the negligence claims brought herein in their entirety.

> **2.    Whether the Route the Defendants Designed and Installed for Boat Show Attendees to Board the Subject Boat was the "Cause-in-fact" of the Plaintiff's Injuries is for the Jury to Determine.**

In their motions, the Defendants heavily rely on their assertion that the "Plaintiff does not specifically recall how or why she fell on March 2, 2013, and is unable to recall or identify the boat on which she fell.[83] The Defendants go on to argue that "[n]o one else actually saw [the Plaintiff] fall, so the evidence regarding causation rests solely on [the Plaintiff's] testimony and photographs and descriptions of the area where she fell."[84] However, viewing the totality of the factual record in this case, as well as "all inferences favorable to the plaintiff's case that may be fairly deduced from the evidence," it is demonstrably evident that there is a jury question as to whether the Defendants design and installation of a dangerous method for consumers to board the Subject Boat was a cause-in-fact of the Plaintiff's injuries.[85]

---

[79] *Wilhelm v. State Traffic Comm'n,* 185 A.2d 715, 721 n. 1 (Md. 1962).

[80] *Jacobs v. Flynn,* 749 A.2d 174, 181 (2000) (internal citations omitted).

[81] *Pittway Corp., Corp.,* 973 A.2d at 787 (internal citation omitted).

[82] *Id.* at 792 (internal citations and quotations omitted); see also *Caroline v. Reicher,* 304 A.2d 831, 835 (Md. 1973); *May v. Giant Food, Inc.,* 712 A.2d 166, 175 (Md. App. 1998).

[83] CM/ECF Document 24 at pg. 10.

[84] *Id.*

[85] *Reiser v. Abramson,* 286 A.2d 91, 93 (Md. 1972). Summary judgment should be withheld on this ground.

Under Maryland law, inquiries into the reasonableness of conduct are usually issues within the province of the jury, as opposed to the Court as a matter of law.[86] As discussed in further detail below, Maryland law has long recognized "a presumption that persons exercise ordinary care for their own safety."[87] Indeed, "[a]n apparent majority of courts give plaintiffs the benefit of a presumption that they would have read and heeded a legally adequate warning."[88] However, "[c]ourts do not conclusively so 'presume'; rather, they so 'presume' absent evidence to the contrary."[89] As the Court of Appeals held in *Eagle-Picher,*

> Applying this Maryland concept to the instant asbestos products litigation means that direct evidence that plaintiffs' decedents would have heeded adequate warnings was not an essential element of the plaintiffs' case. The Maryland "presumption" at a minimum means that jurors are entitled to bring to their deliberations their knowledge of the "natural instinct" and "disposition" of persons to guard themselves against danger.
>
> In the smattering of cases where the argument has been made that a plaintiff would not have heeded a warning, if given, the argument has been based on particular evidence bearing on the characteristics of the specific person who was injured. Those arguments were unsuccessful.[90]

In fact, *Eagle-Pricher* goes a step further and expressly acknowledges a presumption in the State of Maryland that "persons exercise ordinary care for their own safety.[91] "The presumption of due care arises from 'the natural instinct of human beings to guard against danger,' which also has been described as 'the known and ordinary disposition' of persons to guard themselves against danger."[92] Applying these principals to this case, there is a presumption that if the Plaintiff knew of the dangers that confronted her, she would not have boarded the Subject Boat. And the presumption in the Plaintiff's favor notwithstanding, her expert witness on engineering with an emphasis on human factors and ergonomics, Mr. Smith, has opined that "[t]he situation…that was present and evident at the [E]xhibit on the day of [the Plaintiff's] incident was the principal [and] proximate cause of her losing her balance and falling."[93]

---

[86] *See Kahlenberg v. Goldstein,* 431 A.2d 76, 86-87 (Md. 1981).

[87] *Eagle-Picher Indus., Inc. v. Balbos,* 604 A.2d at 469. 445, 464-65 (Md. 1992).

[88] *Id.* at 468.

[89] *Id.*

[90] *Id.* at 469 (internal citations omitted).

[91] *Id.*; see also *Nizer v. Phelps*, 252 Md. 185, 205, 249 A.2d 112, 123 (1969); *Baltimore Transit Co. v. State ex rel. Castranda*, 194 Md. 421, 434, 71 A.2d 442, 447 (1950); *State ex rel. Pachmayr v. Baltimore & O.R.R.*, 157 Md. 256, 262, 145 A. 611, 613-14 (1929); *Lozzi v. Pennsylvania R.R.*, 152 Md. 508, 510, 137 A. 293, 293 (1927); *Baltimore & O.R.R. v. Stumpf*, 97 Md. 78, 91, 54 A. 978, 980 (1903); *Tucker v. State ex rel. Johnson*, 89 Md. 471, 480, 43 A. 778, 781 (1899).

[92] *Eagle-Picher* at 469, citing *Castranda*, 194 Md. at 434, 71 A.2d at 447; *Tucker*, 89 Md. at 480, 43 A. at 781.

[93] Exhibit E at pgs. 4,5.

As indicated in their respective motions, the Defendants have attempted to reverse the evidentiary burden on this issue. The Plaintiff has employed the services of an expert witness, who has made an express finding as to the proximate cause of the Plaintiff's injuries. Neither have the Defendants shown beyond genuine dispute that the Plaintiff behaved in a manner that was inconsistent with the actions of the other Boat Show attendees that boarded the Subject Boat nor have the Defendants demonstrated that they took any precautions to ensure that the Plaintiff and other consumers were given adequate warnings about the dangers of attempting to board the Subject Boat , including posting an employee or representative at the Subject Boat as required.

Additionally, the Defendants argue that "Mr. Smith fails to conclude that the Todd's Marine Product boat 'boarding stairs' 'caused' the Plaintiff to fall and rather would only opine that the stairs were 'conducive' to the incident in question."[94] The Defendants further argue that:

> …Mr. Smith fails to support the Plaintiff's theory - or lack thereof - of causation. In a ten page report, Mr. Smith discusses at length the stairs, etc. To be clear, these Todd's Marine Product boat 'Boarding Stairs' that Mr. Smith discusses at length are outside the [Subject Boat]. Plaintiff, however, unambiguously testified that she fell once she was already on and/or in the [Subject Boat]. She was clear that she made it safely from the stairs on and/or in the [Subject Boat] when she fell.[95]
>
> As such, none of Mr. Smith's findings or opinions are relevant to the instant case…[or] the ultimate determination of this action and therefore are not material.[96]

The Defendants concede, however, that "in order to survive summary judgment, the non-moving party must show that there is a genuine issue of material fact [and] … that competing expert testimony [normally] is used to show genuine disputes."[97] Aside from demonstrating the Defendants' manifest misunderstanding of the principles underlying the well-settled law underlying a motion for summary judgment, including which party has the burden of proof, the Defendants also concede that if Mr. Smith's expert opinion addresses the boarding conditions of Subject Boat that follow Todd's Stairs, that there would be a genuine dispute of material facts.

As set forth more fully above, Mr. Smith does address the conditions of the Subject Boat that followed Todd's Stairs in his Professional Ergonomics Expert Assessment Report. It is true that the Plaintiff's expert witness expressly states that "[t]he condition of [Todd's Steps] not being high enough (*i.e.* large enough with enough steps) to rise a person up to a point of height whereby one could then safely take the last step in the upward sequence and end up on the stern portion of the Subject Boat, is a crucial oversight in terms of the incumbent responsibilities of [NMMA and Ed's Superstore] to provide a

---

[94] CM/ECF Document 24 at pg. 24.

[95] *Id.*

[96] *Id.* at pg. 25.

[97] *Id.*

safe and hazard-free environment at the [Boat Show] "[98] That, however, appears to be where the Defendants stopped reading Mr. Smith's Professional Ergonomics Expert Assessment Report. If the Defendants had simply continued reading, they would not have filed motions for summary judgment that were predicated on the misguided notion that Mr. Smith does not address conditions that followed Todd's Stairs that were the proximate cause of the Plaintiff's fall.

Mr. Smith explains, that "having taken the last step to move from the top of [Todd's Steps] onto the stern portion of the [Subject Boat], a person would then find herself on a narrow edge, several feet in the air, without any means of support or stabilization in order to proceed further onto the [Subject Boat], a maneuver at this point constituting another step up over a large rise at the back of the "Subject Boat] with a relatively steep step downward on the [Subject Boat's] rear area."[99] Mr. Smith continues, expressly stating that "[Ed's Superstore], with the explicit responsibility to provide visitors safe and hazard-free access to the [Subject Boat], did not provide additional support at the stern portion of the [Subject Boat] to help stabilize and balance visitors either stepping off  the steps onto the [Subject Boat] or stepping on them when exiting the [Subject Boat]."[100] Further, Mr. Smith states that "[Ed's Superstore] did not provide any employees or attendants inside the [Subject Boat] to watch, guide, assist, advise, warn, or otherwise ensure safe and unencumbered access to the [Subject Boat], nor any similar people to ensure safe and stable use of the set of steps outside the [Subject Boat], both ascending and descending."[101]

Additionally, while the Defendant's seek to limit Mr. Smith's Professional Ergonomics Expert Assessment Report to the hazard created by the Defendants' utilization of Todd's Steps, Mr. Smith describes a configuration to board the Subject Boat that is fraught with hazards and danger that starts at Todd's Steps and continues up onto the deck of the Subject Boat. Mr. Smith describes the path the Plaintiff and other Boat Show attendees had to take to board the Subject Boat, whereby they would climb to the top of Todd's Steps and be confronted with another step "causing people at this point to make a much larger leg-lift stepping motion than was needed to get to this point on [Todd's Steps]."[102] The railing on Todd's Steps also stops at the last of Todd's Steps and does not continue through or beyond the "larger leg-lifting" step to gain access to the  stern of the Subject Boat, which is accessed "without the aid of a railing ."[103]  "[H]aving taken the last step to move from the top of [Todd's Steps] onto the stern portion of the [Subject Boat], a person would then find herself on a narrow ledge, several feet up in the air, without any support or stabilization in order to proceed further onto the [Subject Boat], a maneuver at this point constituting another step up over a large rise a the back of the [Subject Boat] with a relatively steep step

---

[98] *Id.*

[99] *Id.*

[100] *Id.*

[101] *Id.*

[102] *Id.* at pg. 3.

[103] *Id.*

downward into the [Subject Boat's] rear area."[104] Mr. Smith, thereafter, immediately expressly states that "[Ed's Superstore] with the explicit responsibility to provide visitors safe and hazard-free access to the [Subject Boat], did not provide additional support at the stern portion of the boat to help stabilize and balance visitors either stepping off the steps onto the [Subject Boat] or stepping on to them when exiting the [Subject Boat]."[105] Further, "[Ed's Superstore] did not provide any employees or attendants inside the [Subject Boat] to watch, guide, assist, advise, warn, or otherwise ensure safe and unencumbered access to the [Subject Boat], both ascending and descending."[106] Mr. Smith then concludes:

> **The situation described herein that was present and evident at the [E]xhibit on the day of [the Plaintiff'] incident was the principal [and] proximate cause of her losing her balance and falling.[107]**

Thus, the Defendants' motions for summary judgment should fail on this issue and be denied in their entirety.

### 3.    A Genuine Issue of Material Fact Exists as to the Failure to Warn as to the Full and Complete Nature of the Route to Board the Subject Boat.

Generally, the duty to produce or manufacture "a safe product, with appropriate warnings and instructions when necessary, is no different from the responsibility each of us bears to exercise due care to avoid unreasonable risks of harm to others."[108] "A failure to warn claim, under either negligence or strict liability, requires the following elements: 1) that the defendant owed a duty to warn; 2) that the defendant breached that duty; 3) that there was a direct causal connection between the defendant's failure and the alleged injuries; and 4) that the plaintiff was harmed."[109] The Defendants' motions make glancing attacks at the first and third prongs of this standard. However, a genuine issue of material fact exists as to each of the elements. Therefore, the Defendants are not entitled to judgment as a matter of law on either of these scores, and their motions for summary judgment should be denied in their entirety.

There is no liability for a failure to warn unless the defendant at issue has "knowledge, or by application of reasonable, developed human skill and foresight should have knowledge, of the presence of the [danger]."[110] "In determining whether a defendant should have known of a hazard, the defendant is held to the knowledge of an expert in the field and, at a minimum, he must keep abreast of scientific knowledge, discoveries, and advances."[111] "As a result, a cause of action cannot arise when the defendant,

---

[104] *Id.* at pg, 4.

[105] *Id.*

[106] *Id.*

[107] *Id,*

[108] *Moran,* 332 A.2d at 543.

[109] *Higgins v. Diversey Corp.,* 998 F.Supp. 598, 604 (D. Md. 1997), *citing, Mazda Motor of Am. v. Rogowski,* 659 A. 2d 391, *cert. denied,* 667 A.2d 342 (Md. 1995).

[110] *Higgins,* 908 F. Supp. at 604, *citing, Owens-Illinois v. Zenobia,* 601 A.2d 633 (Md. 1992).

[111] *Id.* at 605 (internal quotation and citation omitted).

as well as the scientific community, lacked sufficient knowledge about a product's dangerous quality."[112] "Moreover, foreseeability is normally a question of fact for the trier of fact to determine."[113]

For purposes of the duty prong of the *Higgins* test, guidance regarding the requisite foreseeability requirement can be obtained from the Maryland cases which deal with the same concept in the context of general negligence.[114] As the Maryland Court of Appeals held in *Segerman v. Jones,*

> [w]hether foreseeability is being considered from the standpoint of negligence or proximate cause, the pertinent inquiry in not whether the actual harm was of a particular kind which was expectable. Rather, the question is whether the actual harm fell within a general field of danger which should have been anticipated.[115]

Indeed, as the Court of Appeals noted in *Moran,*

> the courts are perfectly accurate in declaring that there can be no liability where the harm is unforeseeable, if "foreseeability" refers to the general type of harm sustained. It is literally true that there is no liability for damage that falls entirely outside the general threat of harm which made the conduct of the actor negligent. The sequence of events, of course, need not be foreseeable. The manner in which the risk culminates in harm may be unusual, improbable and highly unexpectable, from the point of view of the actor at the time of his conduct. And yet, if the harm suffered falls within the general danger area, there may be liability, provided other requisites of legal causation are present.[116]

Indeed, "an accident that is unprecedented or extraordinary is not necessarily unforeseeable."[117] "Whether any such unreasonable risk exists in a given situation depends on balancing the probability and seriousness of harm, if care is not exercised, against the costs of taking appropriate precautions."[118] Indeed, in instances where "the cost of giving an adequate warning is usually so minimal, amounting only to the expense of adding some more printing to a label, [this] balancing process will almost always weigh in favor of an obligation to warn of latent dangers."[119]

To be certain, the Plaintiff may well have been aware by past experience that she should exercise reasonable caution when boarding a boat. However, by designing and installing the route to board the Subject Boat, the Defendants' changed that calculus. When people board boats, it is generally in the water

---

[112] *Id.*

[113] *Yonce,* 680 A.2d at 577.

[114] *Moran,* 332 A.2d at 19.

[115] *Segerman v. Jones,* 259 A.2d 794 (Md. 1969).

[116] *Moran,* 332 A.2d at 19, *quoting,* Harper, A Treatise on the Law of Torts, § 7 (1933) (emphasis added); *see also Oxendine v. Merck and Co.,* 236 F.Supp. 2d 517, 526 (D. Md. 2002).

[117] *Gill v. Hango Ship-Owners/AB,* 682 F.2d 1070, 1074 (4th Cir. 1982), *citing, Kunz v. Utah Power and Light Co.,* 526 F.2d 500, 504 (9th Cir. 1975).

[118] *Moran,* 332 A.2d at 543.

[119] *Id.*

or at a boat show with appropriate fixtures and supervision. The route the Defendants designed and installed for Boat Show attendees to board the Subject Boat prevented attendees from drawing upon their past experience. Rather, the route was something different and unique, thereby heightening the Defendants obligation to warn a potential user of the full and complete nature of the route they had designed and installed.[120]

Moreover, there is no evidence to suggest that any sort of risk assessment was done prior to the installation of the Exhibit. Indeed, the Defendants may have developed information after the fact and in the course of this litigation, but there is absolutely no evidence indicating that the Defendants had any such information at the time they were determining whether a particular warning was necessary in this instance, whether modifications needed to be made, or whether there should have been an employee or representative posted at the Subject Boat.

As with the notice issue, one can clearly see the passive posture the Defendants took with regard to the safety of the Exhibit, including the Subject Boat, depending on Boat Show attendees to navigate the unknown and unstable route to board the Subject Boat that the Defendants designed and created. There is no evidence whatsoever indicating any action the Defendants took in their own right before this accident to ensure that the route Baot Show attendees had to take to board the Subject Boat complied with industry standards, manufacturer's recommendations, or other regulatory standards and was otherwise safe, or that any necessary warnings were made. It is for the jury to decide whether such a passive approach to safety was reasonable under the circumstances, and summary judgment as to the Defendants should be withheld on that ground.

Moreover, as indicated above, the Plaintiff is entitled to the benefit of an *Eagle-Pilcher* type presumption that had a warning been given to her regarding the use of the route to board the Subject Baot that she would have heeded its suggestion.[121] The Defendants' respective motions for summary judgment also should be denied on that ground as well.

E.      THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR AFFIRMATIVE   DEFENSES OF CONTRIBUTORY NEGLIGENCE OR ASSUMPTION OF THE RISK.

In their motions for summary judgment, the Defendants claim that they are entitled to entry of summary judgment in their favor on the ground that the Plaintiff was contributorily negligent as a matter of law. Alternatively, the Defendants argue that they are entitled to summary judgment due to the Plaintiff's assumption of the risk of injury associated with boarding the Subject Boat. However, Maryland law is clear that such affirmative defenses are properly for the jury in circumstances such as those presented in this case, and especially in light of the fact that the Plaintiff, herself, is unable to testify

---

[120] *Id.* at 325.

[121] *See Eagle-Picher,* 604 A.2d at 469.

regarding these issues. The Defendants' motions for summary judgment should be denied as they relate to these defenses.

1.      **The Plaintiff Cannot be Deemed Contributorily Negligent as a Matter of Law.**

"Contributory negligence, if proved, is a complete defense that bars a plaintiff's recovery in a negligence action."[122] "The burden of proving contributory negligence is on the defendant."[123] It is important to stress that "[i]t is not every action on the part of a litigant which an opponent by way of 'second guessing' or hindsight may successfully label as contributory negligence."[124] "Contributory negligence, if present, defeats recovery because it is a proximate cause of the accident; otherwise, the negligence is not contributory."[125]

Contributory negligence has been defined traditionally as "the failure to observe ordinary care for one's own safety."[126] At its heart, contributory negligence is "the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do under the circumstances."[127] However, "in measuring contributory negligence, the standard of care to be used as the criterion is that of an ordinarily prudent person under the same or similar circumstances, not that of a very cautious person."[128] As the Maryland Court of Appeals stated in *Sanders v. Williams,*

> Inquiries into the reasonableness of conduct are usually "the province of the jury rather than of the court." *Eagle-Picher Indus., Inc. v. Balbos,* 604 A.2d 445, 464-65 (Md. 1992); *see also Kasten Construction Co., Construction Co.,* 273 A.2d at 93 ("Contributory negligence, like assumption of the risk, is ordinarily a question for the jury.") "The familiar rule to be applied in determining whether the facts justify a holding that the plaintiff was guilty of contributory negligence as a matter of law is that the act (or omission) so relied on must be distinct, prominent and decisive, and one about which reasonable minds would not differ in declaring it to be negligence." *Miller v. Mullenix,* 176 A.2d 203, 204 (Md. 1961). Therefore, "[t]he question of contributory negligence must be considered in the light of all the inferences favorable to the plaintiffs case that may be fairly deduced from the evidence. Where there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom, the question should be submitted to the jury." *Reiser,* 286 A.2d at 93. "There may also be a jury question, even when negligence seems fairly clear, when the facts permit a finding that the injured party's conduct had its basis in a reasonable expectation."

---

[122] *Warsham v. Muscatello, Inc.,* 985 A.2d 156, 167 n. 10 (Md. App. 2009).

[123] *Reiser v. Abramson,* 286 A.2d 91, 93 (Md. 1972).

[124] *Rogers v. Frush,* 262 A.2d 549, 552 (1970).

[125] *Batten v. Michel,* 292 A.2d 707, 711-12 (Md. App. 1972).

[126] *Kasten Construction Co. v. Evans,* 273 A.2d 90, 92 (Md. 1971); *Menish v. Polinger Co.,* 356 A.2d 233, 236 (Md. 1976).

[127] *Potts v. Armour & Co.,* 39 A.2d 552, 556 (Md. 1944).

[128] *Menish,* 356 A.2d at 236.

*Kasten Constr. Co., Constr. Co.,* 273 A.2d at 93 (internal quotation omitted).[129]

As communicated above, under well settled Maryland law, if a plaintiff is not able to testify as to the issue of his or her own contributory negligence arising out of the occurrence at issue, such plaintiff is entitled to a presumption that he or she exercised due care for his or her own safety.[130] This presumption arises out of the "natural instinct of human beings to guard against danger."[131] Such instinct has also been aptly described by the Court of Appeals as "the known and ordinary disposition of persons to guard themselves against danger."[132] For purposes of summary judgment, "[t]he Maryland 'presumption' at a minimum means that jurors are entitled to bring to their deliberations their knowledge of the 'natural instinct' and 'disposition' of persons to guard themselves against danger."[133]

In their respective motions for summary judgment, the Defendants have argued on both primary negligence and contributory negligence that the Plaintiff's  boarding of the Subject Boat, which they argue without support may have had a wet surface, might have had a wet surface  was the proximate cause of the Plaintiff's injuries. Such Defendants put particular emphasis on the fact that it was snowing outside when the Plaintiff and her family entered the Convention Center long before they boarded the Subject Boat, which was after they boarded five or six other boats.

For purposes of the Defendants' motions for summary judgment, it should also be observed that the Defendants owed their invitees a non-delegable duty to reasonably maintain its premises in a safe condition. "The duty imposed by law upon the defendant, as the occupier of the premises, for the reasonable protection its invitee, is not performed by an attempted delegation of it to a third party. It is a non-delegable duty, arising from the control of the premises."[134] In this case, it can be said that the Defendants are attempting to delegate the protection of its invitees to the Plaintiff through its argument that the Plaintiff was solely responsible for her protection and anticipating the hazards inherent in the Defendants' design and construction of the route to board the Subject Boat. Summary judgment should be denied on this ground.

Additionally, as discussed at great length herein, the record in this case suggests that the hazards at issue in this case were anything but "open and obvious," and no warning was given to the Plaintiff as to their existence whatsoever. Accordingly, the question as to whether the Plaintiff acted at the time of the occurrence in conformity with the "natural instinct" and "disposition" to exercise due care in the face of a

---

[129] *Sanders v. Williams,* 120 A.2d 397 (Md. 1956).

[130] *See Baltimore Transit Co. v. State ex rel. Castranda,* 71 A.2d 442, 447 (Md. 1950).

[131] *Id.*

[132] *Tucker v. State ex rel. Johnson,* 43 A. 778, 781 (Md. 1899); *see also Eagle-Picher Indus., Inc., Indus., Inc.,* 604 A.2d at 469.

[133] *Eagle-Picher,* 604 A.2d at 469.

[134] *Lane v. Bethlehem Steel Corp.,* 667 A.2d 962, 967 (Md. App. 1995).

known danger is properly for the finder of fact in this case.[135] The Defendants' respective motions for summary judgment should be denied as to the issue of contributory negligence.

> **2.** **Similarly, the Plaintiff did not Assume the Risk of Being Injured as a Matter of Law.**

Closely related to the doctrine of contributory negligence is the doctrine of assumption of the risk.[136] Such defenses often overlap and "may arise from the same facts and, in a given case, a decision to one may necessarily include the other."[137] "The overlap between assumption of risk and contributory negligence is a complete one where the plaintiffs conduct in voluntarily encountering a known risk is itself unreasonable."[138] "Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of the risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs."[139]

The doctrine of assumption of risk is defined as "an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward him and to take his chances from harm from a particular risk."[140] "It is well settled in Maryland that in order to establish the defense of assumption of risk, the defendant must prove that the plaintiff: 1) had knowledge of the risk of the danger; 2) appreciated the risk of the danger; and 3) voluntarily confronted the risk of danger."[141] Further, "[a]ssumption of the risk will apply only if the undisputed evidence and all permissible inferences drawn therefrom *clearly* establish that the risk of danger was *fully* known to and understood by the plaintiff."[142] "The test of whether the plaintiff knows of, and appreciates, the risk involved in a particular situation is an objective one and ordinarily is a question to be resolved by the jury."[143] "On the other hand, when it is clear that a person of normal intelligence in the position of the plaintiff must have understood the danger, the issue is for the court."[144]

The record herein demonstrates that the Plaintiff was at best a novice when it came to boats; in fact, she only had her limited interaction with boats as a way of spending time with her husband and son. Moreover, the Plaintiff had never been warned of any risk attendant to boarding the Subject Boat. The

---

[135] *Eagle-Picher,* 604 A.2d at 469.

[136] *Schroyer v. McNeal,* 592 A.2d 1119, 1121 (Md. 1991).

[137] *Id.*

[138] *Id.* at 1122 (internal quotation omitted).

[139] *Warner v. Markoe,* 189 A. 260, 264 (Md. 1937).

[140] *Rogers,* 262 A.2d at 554.

[141] *BG&E v. Flippo,* 705 A.2d 1144, 1156 (Md. 1998), *quoting, ADM Partnership v. Martin,* 702 A.2d 730, 734 (Md. 1997).

[142] *Schroyer.* 592 A.2d 1119 at 1123, *quoting, Kasten Constr. Co., Constr. Co.,* 273 A.2d at 94 (emphasis in original.)

[143] *Schroyer,* 592 A.2d at 1123, *quoting, Gibson v. Beaver,* 226 A.2d 273, 275 (Md. 1967).

[144] *Schroyer,* 592 A.2d at 1123.

Plaintiff  cannot be deemed to have assumed the risk of injury under well-settled Maryland law, and summary judgment should be denied on this ground.[145]

Additionally, as discussed below, Maryland law indicates that an injured party needs to have knowledge of a hazard *plus* a specific understanding of the risk associated with that hazard in order for the hazard to be considered "open and obvious." Moreover, the requisite knowledge and understanding has to be objectively established before the resolution of such issue can be taken from the jury.[146] It is only when it is clear that a person of normal intelligence in the position of the plaintiff must have understood the danger that the "open and obvious" issue is for the court as a matter of law.[147] Indeed, "[t]here is no exact test or formula by which it may be determined as a matter of law, that a condition is so open and obvious than an invitee is charged with knowledge of its existence and consents to the risk. Each case must depend on its own facts and circumstances."[148] The Defendants each have failed to meet the high burden necessary to establish that a hazard was "open and obvious" to a person of normal intelligence, such as the Plaintiff, as a matter of law. This issue must be resolved by a jury, thereby rendering summary judgment unavailable in this case.

It can hardly be disputed that "there are certain risks which anyone of adult age must be taken to appreciate: the danger of slipping on ice, of falling through unguarded openings, of lifting heavy objects ... and doubtless many others."[149] In order to prevail on the "open and obvious" issue as a matter of law, the Defendants must demonstrate that the risk associated with the boarding of the Subject Boat was objectively apparent to a person of normal intelligence. However, even if the Defendants can show that the *characteristics* of boarding of the Subject Boat were apparent, Maryland law indicates that the risks associated with those characteristics must be equally apparent in order for the issue to be removed from jury consideration. This they have failed to do, and summary judgment must be withheld on this ground.

The case of *Tie Bar, Inc. v. Shartzer*, is a valuable review of the concepts in play surrounding the "open and obvious" issue.[150] As the Court of Appeals noted in *Shartzer,*,

> The general rule is that the keeper of a shop or other place of business, to which customers or other persons are invit  ed, is bound to exercise due

---

[145] *See Texas Co. v. Washington B. & A. Elec. R.R. Co.,* 127 A. 752, 755 (Md. 1925) ("And this contributory negligence arises from the failure of the plaintiff to use due care to avoid dangers which he knows from past experience exist on the premises to which he has been invited, or which he should know exist because of his knowledge of the character and kind of premises to which he has been invited, or because the dangers are so obvious that any ordinarily prudent man would see them and guard against them.")

[146] *See Schroyer,* 592 A.2d at 1123; *Gibson,* 226 A.2d at 275.

[147] *Id.* at 1123.

[148] *Gellerman v. Shawan Road Hotel L.P.,* 5 F.Supp. 2d 351, 353 (D. Md. 1998), *quoting, Adkins v. Sutherland Lumber Co.,* 307 S.W.2d 17, 22-23 (Mo. Ct. App. 1957).

[149] *ADM Partnership,* 702 A.2d 730, 734,, 702 A.2d 730, 734 (Md. 1997), *quoting,* W. Prosser, Handbook of the Law of Torts § 68 at 488 (2d ed.).

[150] 241 A.2d 582 (Md. 1968)

care to maintain the premises in a reasonably safe condition and to give adequate warning of latent or concealed perils: otherwise he will be liable for injuries sustained as a consequence of the failure to do so. The basis of liability is the presumed superior knowledge of the dangerous condition, but if the injured person knew or should have known of the dangerous situation there is no right of recovery.

Since the obviousness of a danger is a factor in determining the duty of an owner or occupant to safeguard or forewarn against it, it is difficult sometimes to tell whether decisions denying recovery are based on a lack of primary negligence or the presence of contributory negligence. Our predecessors recognized this fact in *Texas Co. v. Washington B. & A. Electric R. Co.* that the real basis is contributory negligence which arises from the failure of the plaintiff to use due care to avoid dangers which he knows from past experience exist on the premises to which he has been invited, or which he should know exist because of his knowledge of the character and kind of premises to which he has been invited, or because the dangers are so obvious that any ordinarily prudent man would see them and guard against them.

*\*\*\**

But this was not the situation here for the plaintiff-appellee, never having been there before, was not familiar with the premises. Although one measure of contributory negligence is the need to anticipate danger in a given situation, [the invitee] had a right to assume that [the invitor] would warn him of existing unsafe conditions. *Shartzer,* 241 A.2d at 585 (internal citations and quotations omitted).

Similarly, the Court of Appeals found in *Honolulu Ltd.,* a case decided shortly before *Shartzer,*

The ordinary person can encounter many dangers safely if he is fully aware of their presence at the time. Where a dangerous condition is obvious, the plaintiff may be charged with knowledge of it, and the knowledge of the condition may remove the element of unreasonableness from a danger. We have held, for example, that the handle of an automobile jack, protruding from the front of an automobile in a garage, is an obvious danger to one who was thoroughly familiar with the nature of the premises and the conduct of a garage business and that display cases and racks, which a seller uses to show his merchandise, are an obvious danger when in full view.[151]

In this case, there can be no question that the Plaintiff was not familiar with the Subject Boat to a degree sufficient to charge her with knowledge of the risk posed by the configuration of the route the Defendants designed and installed for Boat Show attendees to board the Subject Boat. The Plaintiff had never been confronted with the ingress and egress configuration utilizing Todd's Stairs prior to her arrival at the Boat Show or the larger step thereafter without any support from a railing or one of the Defendants' employees or representatives. Additionally, the Plaintiff was not given information regarding the hazards and danger or the route to board the Subject Boat before she ascended. The Defendants argue that the fact that it was snowing outside when she entered the Convention Center and boarded five to ten other boats

---

[151] *Honolulu Ltd.,* 224 A.2d at 437-38 (internal citations omitted).

prior to ascending onto the Subject Boat is dispositive as to whether she had knowledge of the risk of injury associated with boarding the Subject Boat. However, it is equally possible, and in fact probable, that the Plaintiff's feet were dry and that she had not experienced any cause for concern on any of the other boats she had boarded prior to boarding the Subject Boat, which coupled with the reasonable assumption that the route of ingress and egress onto the Subject Boat was safe, led the Plaintiff to believe that she could board the Subject Boat without incident.

Based on this record, the facts permit a finding that the Plaintiff's conduct had their basis in a reasonable expectation that it was safe to board the Subject Boat. Moreover, there is a genuine dispute of fact as to the degree to which the Plaintiff recognized a risk associated with boarding the Subject Boat, if she recognized any such risk at all, which is highly questionable. As such, a jury question has been established, thereby avoiding a grant of summary judgment on the issue of assumption of the risk.[152]

The fact that the portion of the ingress route where Todd's Steps meet the Subject Boat can be seen in photographs of the Subject Boat and that the step onto the Subject Boat was considerably larger than the steps on Todd's Stairs may suggest to some persons that they were about to confront a hazardous and dangerous condition, does not necessarily follow that a person of normal intelligence in the Plaintiff's position must have understood the danger of severe injury posed by the route of ingress onto the Subject Boat that summary judgment would be proper on this issue.[153] While Todd's Steps and the additional steps required to board the Subject Boat may have been apparent to the Plaintiff, the risk associated with them was not. The case of *Md. State Fair & Agricultural Soc., Inc. v. Lee,* is particularly useful in demonstrating this important distinction.[154]

In *Lee*, the Court of Special Appeals was asked to decide whether a horse exerciser of moderate experience assumed the risk of her fatal injuries when she was thrown by a horse into a stone wall surrounding the Timonium race track.[155] Apparently, the horse became "fractious" when it was struck by loose dirt and sand from the track that had been blown by a gust of wind as horse and rider attempted to enter the track for an exercise session.[156] As a result of this occurrence, the estate of the rider filed a suit sounding in negligence against the operators of the Timonium race track alleging in part that the racing surface was not kept in a safe condition for riders such as the decedent. Such suit also alleged that the design of the stable area and the entrance to the track was negligent in that a safer "paddock gate" onto the track was kept closed during training hours, that asphalt was used for the path between the track entrance and the stables, thereby increasing the risk that an already out-of-control horse will become even more frightened if it slips on the asphalt, and that the paddock wall was made of stone instead of chain

---

[152] *See Kasten Constr. Co., Constr. Co.,* 273 A.2d at 93.

[153] *See Schroyer,* 592 A.2d at 1123.

[154] 348 A.2d 44 (Md. App. 1975).

[155] *Id.,* at 47.

[156] *Id.*

link fencing, thereby increasing the risk and magnitude of injury if a rider is thrown.[157] In response, the track operator argued that that the configuration of the stable area was an open and obvious condition well-known to the rider and that she therefore assumed the risk of her fatal injuries.[158] Despite the rider's undisputed experience in riding horses, the Court of Special Appeals held that is was proper for the trial court to have let the assumption of the risk issue go to the jury.[159] In so holding, the Court of Special Appeals stated that "[a]bsent proof of sufficient expertise, an invitee ... cannot be said to have fully appreciated certain dangers merely because he or she was aware of them."[160] The *Lee* Court went on to state that the record in that case "[did] not show that the dangers posed by negligent conditions such as those alleged would be necessarily comprehended by any person of normal intelligence in ... [the decedent's] position," notwithstanding her riding experience and the fact that she was aware of the negligent conditions, and in fact complained about the closure of the paddock gate.[161]

The Defendants focus in their motions on the voluntariness aspect of the assumption of risk standard. Indeed, there is no evidence in the record to suggest that the Plaintiff was somehow compelled or otherwise forced to board the Subject Boat. However, there is likewise insufficient evidence in the record to find as a matter of law that a person of normal intelligence in the Plaintiff's position must have understood and appreciated the particular danger associated with boarding the Subject Boat.[162] The boarding of the Subject Boat at the Boat Show is not in the class of activities such as walking on ice or lifting a heavy object where the associated risk of injury would be obvious to virtually all adults.[163] It is for the jury to determine whether the Plaintiff objectively should have connected the aspects of route of ingress onto the Subject Boat that she could see with a risk of serious injury if she used it.[164]

The Defendants have failed to carry their burden on the assumption of the risk defense for purposes of summary judgment and their motions should be denied on this ground. Further, for purposes of negligence, the Defendants also have failed to demonstrate as a matter of law that the route of ingress onto the Subject Boat constituted an "open and obvious" hazard such that they owed no duty of care to the Plaintiff. Summary judgment should also be withheld on this issue.

---

[157] *Id.*

[158] *Id.*

[159] *Id.* at 49.

[160] *Id.*

[161] *Id.;* see also *McKenzie v. Egge,* 113 A.2d 95, 99 (Md. 1955).

[162] *See Schroyer,* 592 A.2d at 1123.

[163] *See ADM Partnership*, 702 A.2d at 734.

[164] *Lee*, 348 A.2d at 49.

**IV.      CONCLUSION**

WHEREFORE, FOR THE REASONS SET FORTH in Plaintiffs' Omnibus Memorandum in Opposition to Pending Defense Motions, both of the currently pending motions filed by the Defendants in the instant matter should be denied, and the Plaintiff should be granted such other relief as this Honorable Court finds just and proper under the circumstances.   As set forth more fully above, the Plaintiff has proven that the Defendants were the "cause-in-fact" of her injuries and that the Plaintiff's fall would not have happened "but for" the Defendants' negligent acts. For all the reasons above, the Plaintiff has also proven that the Defendants were the "legally cognizable" cause of her injuries and that the Defendants were on notice of the hazardous conditions. Likewise, the Plaintiff has demonstrated that she was not contributorily negligent nor did she assume the risk of her injuries. And finally, the Plaintiff has established that her liability expert indisputable has opined as to the proximate cause of the Plaintiff's injuries.

Respectfully submitted,

May 18, 2015                                                        /s/

_____
*Charles H. Edwards IV*
Law Office of Barry R. Glazer, P.C.
1010 Light Street
Baltimore, Maryland 21230
charles.edwards@robinhoodlawyers.com
phone: (410) 547-8568 fax: (410) 547-0036
bar number: 29977
*Attorney for the Plaintiff*

### *CERTIFICATE OF SERVICE*

The Plaintiff, Angela Schneider, hereby certifies that on this 18th day of May, 2015, a copy of this Motion, Memorandum, Request for Hearing, and Proposed Order were e-served on:

Jessica P. Butkera, Esquire
Rollins, Smalkin, Richards, & Mackie, LLC
401 North Charles Street
Baltimore, Maryland 21201
*Attorney for the Defendants*

Respectfully submitted,

May 18, 2015 /s/
_____
***Charles H. Edwards IV***
Law Office of Barry R. Glazer, P.C.
1010 Light Street
Baltimore, Maryland 21230
charles.edwards@robinhoodlawyers.com
phone: (410) 547-8568 fax: (410) 547-0036
bar number: 29977
*Attorney for the Plaintiff*

## *REQUEST FOR HEARING*

The Plaintiff, Angela Schneider, respectfully requests that this Honorable Court schedule a hearing on all issues set forth herein this Opposition to the Pending Defense Motions.

Respectfully submitted,

May 18, 2015                                                        /s/

_____

***Charles H. Edwards IV***
Law Office of Barry R. Glazer, P.C.
1010 Light Street
Baltimore, Maryland 21230
charles.edwards@robinhoodlawyers.com
phone: (410) 547-8568 fax: (410) 547-0036
bar number: 29977
*Attorney for the Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ANGELA SCHNEIDER** | * | |
| *Plaintiff* | * | |
| **v.** | * | Civil Action No.:     **CCB-14-1035** |
| **ED'S MARINE SUPERSTORE,** *et al.* | * | |
| *Defendants* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**ORDER OF COURT**</u>

      **UPON CONSIDERATION OF**, Defendant Ed's Marine Superstore and National Marine Manufacturers Association's Motion for Summary Judgment, and the Plaintiff's Opposition thereto, and this matter having come before this Court for a hearing, it is on this _____ day of _____, 2015, hereby:

      **ORDERED**, that Defendants Ed's Marine Superstore and National Marine Manufacturers Association's Motion for Summary Judgment, be and the same, is **DENIED**.

 

_____
Magistrate Judge Stephanie A. Galliger
U.S. District Court for the District of Maryland