**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ANGELA SCHNEIDER,           *

                               *

        Plaintiff,        *

                               *

        v.              *          Civil Case No. SAG-14-1035

                               *

ED'S MARINE SUPERSTORE, INC., et al.,   *

                               *

        Defendants.     *

\*\*\*\*\*\*\*

**MEMORANDUM OPINION**

Plaintiff Angela Schneider filed this action against Defendants Ed's Marine Superstore, Inc. ("Ed's Marine") and National Marine Manufacturers Association ("NMMA") (collectively "Defendants"), alleging that Defendants' negligence caused Ms. Schneider to slip and fall while boarding an exhibition boat displayed by Ed's Marine at the 2013 Progressive Insurance Baltimore Boat Show. [ECF No. 1]. Now pending before the Court is Defendants' Motion for Summary Judgment. [ECF No. 24]. I have also reviewed Plaintiff's Opposition and Defendants' Reply thereto. [ECF Nos. 29, 31]. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated herein, Defendants' Motion will be denied.

**I. Background**

On March 2, 2013, Ms. Schneider and her family (the "Schneiders") attended the Progressive Insurance Baltimore Boat Show (the "Boat Show"), a watercraft exhibition produced by NMMA and held at the Baltimore Convention Center (the "Convention Center") in downtown Baltimore, Maryland. *See* Compl. ¶¶ 1, 6. Defendant Ed's Marine is a Virginia corporation that was exhibiting boats for sale at the Boat Show, including a Sea Hunt Victory

225LE model boat (the "Display Boat")[1] that Boat Show attendees, including the Schneiders, were invited to "see and board."  Compl. ¶¶ 8–11; Pl. Opp. 4–5.

 To assist attendees in boarding the Display Boat, Ed's Marine temporarily installed a set of stairs (the "Boarding Stairs") with an accompanying handrail leading up to a platform on the back left side of the Display Boat's stern.   *See* Pl. Opp. 8; Exh. E [Ergo. Exp. Assess. Rep.], p. 4; Defs. Mot., Exh. 5.  According to Ms. Schneider's ergonomics expert, in order to board the Display Boat from the platform, an attendee would have to step over a "large rise" onto a cushion, and then, "without any means of support or stabilization," step down approximately sixteen (16) inches onto the floor of the boat.  Pl. Opp., Exh. E [Ergo. Exp. Assess. Rep.], p. 4. *See also* Defs. Mot., Exhs. 6, 9.  Ed's Marine claims that it inspected all of its exhibition boats, including the Display Boat, "prior to [the Boat Show's] start on each day."  Pl. Opp. 5; Exh. D [Ed's Marine's Resp. to Pl.'s Interrog. No. 7].

 At approximately 4:00 AM on the day in question, Ms. Schneider took a Percocet to alleviate the pain of a kidney stone, which had awoken her in the middle of the night.  Defs. Mot. 2; Exh. 2 [Tr. of A. Schneider], pp. 20–21.  Despite her condition, Ms. Schneider woke up around 8:30 AM feeling "fine," and the Schneiders left for the Boat Show later that day.  *See id.*, p. 24.  As the Schneiders arrived at the Convention Center, Ms. Schneider observed snow flurries, and her husband recalls that it was a "slippery snowy day."  *Id.*; Exh. 3 [Tr. of M. Schneider], p. 59.  Once inside the Convention Center, the Schneiders boarded several other exhibitors' boats before arriving at the Ed's Marine exhibit.  Defs. Mot. 3.  Ms. Schneider did not observe any employees or representatives of Ed's Marine attending the exhibit, and she claims

---

[1] In their Motion, Defendants claim that the Schneiders were unable to positively identify a photograph of the Sea Hunt Victory 225LE model as the boat Ms. Schneider was boarding when she fell.  *See* Defs. Mot. 9–10.  However, it appears that Defendants are merely highlighting the Schneiders' incomplete recollections as part of their legal theory, rather than disputing that the alleged incident occurred on that particular model boat.  Indeed, Defendants would negate their own Motion if they were to argue that this material fact is in dispute.  Thus, for the sake of clarity, the "Display Boat" refers to the alleged boat where Ms. Schneider fell—the Sea Hunt Victory 225LE model. *See* Pl. Opp. 1.

that at no time did anyone affiliated with Ed's Marine address him or herself to Ms. Schneider. *See* Pl. Opp. 8; Defs. Mot., Exh. 2 [Tr. of A. Schneider], p. 35.

Ms. Schneider's husband and son boarded the Display Boat first without incident. *See* Defs. Mot., Exh. 2 [Tr. of A. Schneider], p. 35; Exh. 7 [Tr. of D. Schneider], p. 19. Ms. Schneider then proceeded to climb the Boarding Stairs, and recalls accessing the Display Boat at the point marked with a number "1" on Exhibit 6, which identifies the stern platform. Defs. Mot. 5; Exh. 2 [Tr. of A. Schneider], p. 46; Exh. 6. In her deposition, Ms. Schneider described the events leading up to her injury as follows:

A:   So I got up on the boat, and went to step down into the boat.

Q:   Okay.  So when you say you got up on the boat, can you be specific for me about the stairs to the boat, the physical boat itself?

A:   There were stairs up to the boat.  And from there, there was like a big area from the stairs to get over to the boat, like a wider step to get over.

Q:   Was it a gap in air or was the stairs flush against the boat?

A:   No, it wasn't flush against.  It wasn't – there was a few inches between that and the boat. . . .  But then I stepped over, onto the cushion, and then down into the boat. . . .  So just as I did that, my husband – the man in front of my husband said watch it, things are slippery up here.  I saw the man talking to my husband.  And then my husband turned around and said to me be careful.  As soon as he said that, I fell.

Q:   Okay.  So if I'm understanding you correctly, you were inside the boat, stepping from the back cushion seat to the floor of the boat when you fell?

A:   Okay.  So I get up – I'm trying to remember. . .  I get up onto the boat, took a big gap over.  So I'm trying to remember if my foot slipped while up on that cushion, or actually when I hit the bottom.  Which, when I got up onto the cushion, when my husband turned around, he said be careful because there was something slippery all over the cushion.  Then – I can't remember if my foot actually slipped off of the cushion into the boat.  Because all I remember is once it slipped, there was nothing for me to grab onto.

* * *

> Q:      So do you recall that you were standing upright on the cushions of the back seat of the boat when you observed your husband and this gentleman conversing?  Or were you still moving at that point in time?
>
> A:      I can't recall.  I don't know if I was moving or standing still.

Defs. Mot., Exh. 2 [Tr. of A. Schneider], pp. 36–37.  Later during her deposition, Ms. Schneider

described the moments directly preceding her fall as follows:

> Q:      [W]hen you first started traversing the steps up to the boat, before entering the boat, before entering the steps or the boat, did you ask anyone for assistance?
>
> A:      No.  That wasn't necessary.
>
> Q:      Why wasn't it necessary?
>
> A:      Because it was just steps.
>
> * * *
>
> Q:      Was there anything about the steps when you appeared to the back of the boat that was concerning or appeared unsafe to you?
>
> A:      When I got to the top step.  It was a little gap.  And I saw that it was, you know, a wider step.  But nothing I couldn't make.  And my husband turning around to grab my hand, definitely I would be able to make that.
>
> Q:      Did your husband actually grab your hand and assist you in getting from that final step into the boat?
>
> A:      He did not have time, no.  I slipped on that top step.  And then by that time, we were down.

*Id.*, pp. 39–40.  Ms. Schneider also testified that the cushion and floor appeared "wet" and

"slippery," and that she was on the cushion—either partially or wholly—when she slipped and

fell.  *See* Defs. Mot. 4; Exh. 2 [Tr. of A. Schneider], pp. 52–53, 58.  When presented with an

illustration of the Display Boat at her deposition, Ms. Schneider recalled falling somewhere

between the back cushion and the floor, and landing on the floor at either the spot marked with a

big or small "X" on Exhibit 6.  Defs. Mot. 5; Exh. 2 [Tr. of A. Schneider], p. 48; Exhs. 5, 6.

In his deposition, Ms. Schneider's son recalled that his mother was on "the surface of the boat and not the stairs" when she fell, and that she had one foot on the platform and one foot "leading into the deeper part of the boat." Defs. Mot. 5; Exh. 7 [Tr. of D. Schneider], pp. 20, 25. However, he could not identify the precise layout of the Display Boat, and was unsure whether the stern platform was behind and below the cushion, as pictured in Exhibit 5, or at the same level. Defs. Mot., Exh. 5; Exh. 7 [Tr. of D. Schneider], pp. 22–23. Ms. Schneider's son also recalled that the surface of the boat felt slippery, but that he did not actually see any liquid. Defs. Mot. 5; Exh. 7 [Tr. of D. Schneider], pp. 18–19. Ms. Schneider's husband did not witness his wife's fall, but recalled her being in the bottom of the boat after she fell. Defs. Mot. 5; Exh. 3 [Tr. of M. Schneider], pp. 31, 33–34. When describing her injury, Ms. Schneider stated during her deposition that "[her] ankle twisted and broke . . . . [a]nd [that she] fell on top of [her]self, on top of the ankle." Defs. Mot., Exh. 2 [Tr. of A. Schneider], p. 38. According to the Complaint, Ms. Schneider's injuries were severe, necessitating corrective surgery and ongoing treatment. *See* Compl. ¶¶ 12, 22, 30.

On April 3, 2014, Ms. Schneider filed the instant lawsuit, alleging negligence against Defendants, and seeking compensatory damages and attorney's fees. Defendants filed their Motion for Summary Judgment on April 22, 2014. The parties agreed to proceed before a U.S. Magistrate Judge [ECF Nos. 12–14]. This case was assigned to me, pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4, on May 29, 2014. [ECF No. 11].

## II.  Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law . . . ." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute regarding a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.   A party seeking summary judgment bears the burden of showing that there is no evidence to support the non-moving party's case, and must only show an absence of material fact.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   In response, the non-moving party must show that there is a genuine issue for trial.   District courts reviewing a motion for summary judgment "must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmovant."   *McLean v. Ray*, 488 F. App'x 677, 682 (4th Cir. 2012) (citations omitted) (internal quotation marks omitted).   In resolving a summary judgment motion, the district court's role is to determine whether there is a genuine issue for trial, not "to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.

## III.  Discussion

### A.  Negligence Law in Maryland[2]

To assert a claim of negligence in Maryland, the plaintiff must prove that: (1) the defendant was under a duty to protect the plaintiff from injury, (2) the defendant breached that duty, (3) the plaintiff suffered actual injury or loss, and (4) the injury or loss proximately resulted from the defendant's breach of the duty.   *See 100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212–13, 60 A.3d 1, 10 (2013).   The duty of care that an owner or occupier of premises owes to persons on the premises varies according to the visitor's status as an invitee (i.e., a business invitee), a licensee by invitation (i.e., a social guest), a bare licensee, or a trespasser.   *See Baltimore Gas & Elec. Co. v. Lane*, 338 Md. 34, 44, 656 A.2d 307, 312 (1995).

---

[2] A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law.   *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).   Because the alleged events took place in Maryland, the substantive tort law of Maryland governs Ms. Schneider's negligence claims.   *See Hauch v. Connor*, 295 Md. 120, 123–24, 453 A.2d 1207, 1209 (1983).

A landowner owes the highest duty of care to a business invitee, defined as "one invited or permitted to enter another's property for purposes related to the landowner's business." *Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 334, 859 A.2d 266, 273 (2004) (internal quotation marks omitted). Here, for purposes of summary judgment, Defendants do not contest Ms. Schneider's characterization as a business invitee.

"An occupier of land has a duty to use reasonable and ordinary care to keep the premises safe for an invitee and to protect him from injury caused by an unreasonable risk that the invitee, by exercising ordinary care for his own safety, will not discover." *Henley v. Prince George's County*, 305 Md. 320, 339, 503 A.2d 1333, 1343 (1986). Reasonable and ordinary care includes warning invitees of known hidden dangers, inspecting the premises, and taking reasonable precautions against foreseeable dangers. *See Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997). However, a business invitor is not "an insurer of the safety of his customers while they are on the premises and no presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in his store." *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232, 210 A.2d 724, 725 (1965). Thus, a business invitor ordinarily has no duty to warn an invitee of an open, obvious, and present danger. *Tennant*, 115 Md. App. at 389.

To prove that a business invitor breached his duty, the invitee must show "not only that a dangerous condition existed, but also that the proprietor 'had actual or constructive knowledge of it, and that that knowledge was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee.'" *Rehn v. Westfield Am.*, 153 Md. App. 586, 593, 837 A.2d 981, 984 (2003) (quoting *Keene v. Arlan's Dep't Store of Baltimore, Inc.*, 35 Md. App. 250, 256, 370 A.2d 124, 128 (1977)). *See also* W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 61 (5th ed. 1984) ("The mere existence of a defect or danger is generally insufficient to

establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it.").  Where a showing is made that a business invitor caused the dangerous condition, further knowledge of the condition need not be shown.  *See Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 119, 113 A.2d 405, 408 (1955).

Moreover, "a plaintiff may recover only those damages that are affirmatively proved with reasonable certainty to have resulted as the natural, proximate and direct effect of the tortious misconduct." *Jones v. Malinowski*, 299 Md. 257, 269, 473 A.2d 429, 435 (1984).  Importantly, the proximate cause of an injury need not be the sole cause; rather, the plaintiff need only establish a "reasonable connection" between the defendant's negligence and the plaintiff's injury.  *Young v. United States*, 667 F. Supp. 2d 554, 561 (D. Md. 2009).  In order to establish a "reasonable connection," the plaintiff must show that the defendant's negligent conduct was both: (1) a cause in fact, and (2) a legally cognizable cause of the plaintiff's injury.  *See id.*; *Wankel v. A&B Contractors, Inc.*, 127 Md. App. 128, 159–60, 732 A.2d 333, 349 (1999).

### B.  Plaintiff's Negligence Claim

Ms. Schneider alleges that Defendants were negligent in the "proper control, management, maintenance, supervision, operation, repair, inspection, and general safekeeping" of the Display Boat, which resulted in hazardous conditions on the boat, including a "dangerous, defective, slippery, and wet deck," and unsafe boarding route.  Compl. ¶ 16.  Specifically, Ms. Schneider claims that Defendants: (1) failed to provide a safe means for Boat Show attendees to board the Display Boat; (2) failed to properly inspect, discover, and remove the hazards associated with boarding the Display Boat; (3) failed to supervise the Display Boat while attendees boarded; and (4) failed to give any warning of the dangerous and hazardous conditions, of which they had actual or constructive notice, to attendees.  *See id.* ¶¶ 17–18.

In their Motion, Defendants assert that they are entitled to summary judgment because Ms. Schneider cannot prove that the actions of either Defendant were a "cause-in-fact" or a "legally cognizable" cause of her injuries.  Defs. Mot. 8–9.  Specifically, Defendants claim that Ms. Schneider is unable to recall any details about the fall, and that her ambiguous and inconsistent testimony does not allege a coherent theory of causation.  *Id.* at 9–15.  Defendants further claim that Ms. Schneider cannot show that they had actual or constructive notice of the purportedly dangerous conditions on the Display Boat, and that the evidence conclusively establishes that Ms. Schneider contributed to and assumed the risk of her own injuries.  *Id.* at 16–20.  Finally, Defendants argue that, to the extent Ms. Schneider has alleged that her fall was due to "slippery" or "wet" conditions *inside* the Display Boat, her sole expert testified only to the hazardous nature of the Boarding Stairs *outside* the Display Boat.  *Id.* at 9.  Thus, Defendants contend, without the requisite expert testimony necessary to satisfy her burden of proof, Ms. Schneider's claims cannot survive summary judgment.  *Id.*

In her Opposition, Ms. Schneider argues that the record as a whole supports a reasonable inference that Defendants' "design and installation of a dangerous method for consumers to board the [Display] Boat was a cause-in-fact of the Plaintiff's injuries."  Pl. Opp. 16.  Ms. Schneider further argues that undisputed facts concerning Defendants' role in installing and inspecting the Display Boat demonstrates both actual and constructive knowledge of the risks associated with the boarding route, and that a jury should decide whether Defendants' "lax attitude" toward their customer's safety was a proximate cause of Plaintiff's injuries.  *Id.* at 12, 14.  Ms. Schneider also challenges Defendants' representation of her expert's opinion, pointing to testimony by her expert that the situation as a whole—including the lack of a supporting handrail on the Display Boat's stern, the lack of employee supervision, and Defendants' failure to warn of the dangers associated with boarding the Display Boat—was conducive to Ms.

Schneider's fall.  Pl. Opp. 7; Exh. E [Ergo. Exp. Assess. Rep.], p. 4 ("The situation . . . that was present and evident at the [Ed's Marine] exhibit on the day of Ms. Schneider's incident was a principal proximate cause of her losing her balance and falling.").  Finally, Ms. Schneider argues that Defendants' claims as to contributory negligence and assumption of the risk are typically decided by juries, and Defendants have "manifestly failed to identify any reason why this case should be an exception to this rule."  Pl. Opp. 1.

### C.  Analysis

For each of Defendants' arguments discussed below, the Court finds that Ms. Schneider has presented sufficient evidence for a reasonable jury to conclude that Defendants negligently caused her to slip and fall while boarding the Display Boat.  Thus, Defendants have failed to show that there is no genuine issue for trial, and are therefore not entitled to judgment as a matter of law.

#### i.  Causation

According to Defendants, Ms. Schneider variably alleges in her Complaint that her fall was caused by "dangerous and defective" Boarding Stairs, a "smooth and slippery surface," and an "unstable cushion," but then raised, for the first time, the notion of a "wet" substance during her deposition.  Defs. Mot. 13.  Defendants contend that, in fact, Ms. Schneider "is unable to recall exactly or how why [sic] she fell," and that "it is just as possible that the Percocet she had taken hours before this incident, her husband calling out to her and distracting her, or simply her tripping or stumbling on the boat caused her to fall."  *Id.* at 9, 15.  In Defendants' view, Ms. Schneider's ambiguous and inconsistent allegations amount to "[m]ere speculation," and "[are] not sufficient to withstand a motion for summary judgment."  *Id.* at 15.

To survive summary judgment, a plaintiff must introduce specific factual evidence to support its theory of causation, and not rely on mere speculation.  *Frostbutter v. Bob Evans*

*Farms, Inc.*, 2013 WL 4026985, at *7 (D. Md. Aug. 6, 2013).  The evidence must amount to a "probability, not just a possibility" that the defendant's negligence caused the plaintiff's injuries.  *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671–72 (D. Md. 1999), *aff'd*, 213 F.3d 632 (4th Cir. 2000).  *See also Wilhelm v. State Traffic Safety Comm'n*, 230 Md. 91, 103 n.1, 185 A.2d 715, 721 (1962) (internal quotation marks omitted) ("[T]he test of the sufficiency of the evidence to take the question of causal relationship to the jury is reasonable probability . . . .").

Here, the record establishes that Ms. Schneider's allegations rise above the level of mere speculation.  Both Ms. Schneider's husband and son corroborated several key aspects of what appears to be Ms. Schneider's predominant theory of causation: that a combination of dangerous conditions on the Display Boat—including a slippery surface, the absence of support on the stern, and the lack of supervision—caused her to fall.  Ms. Schneider's son testified during his deposition that the surface of the boat felt slippery, and recalled that his mother was stepping from the surface platform to the deck when she fell.  *See* Defs. Mot., Exh. 7 [Tr. of D. Schneider], pp. 18–19, 20, 25.  Although Ms. Schneider's husband did not witness his wife's fall, he remembers her landing at the bottom of the boat.  *See* Defs. Mot., Exh. 3 [Tr. of M. Schneider], pp. 31, 33, 34.  This testimony supports the theory that a slippery platform and/or cushion and the lack of "[any]thing . . . to grab onto" caused Ms. Schneider to fall.  *See* Defs. Mot., Exh. 2 [Tr. of A. Schneider], p. 37.

Ms. Schneider's ergonomics expert further supports her causation theory, noting not just the dangers inherent to the Boarding Stairs, but also the lack of "support or stabilization" atop the stern platform, and the absence of employees to "ensure safe and unencumbered access" to the boat.  Ms. Schneider's expert concludes that "the situation . . . that was present and evident at the exhibit . . . was the principal, proximate cause of [Ms. Schneider's fall]."  Pl. Opp., Exh. E [Ergo. Exp. Assess. Rep.], p. 4.  No further proof is required from the Plaintiff at this stage of the

11

litigation, and indeed, summary judgment has been defeated on far less.  *See, e.g.*, *Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 565 (D. Md. 2014) (denying defendant's motion for summary judgment even though "the evidence from which a jury could conclude that wet, slippery conditions existed on the dance floor and caused Ms. Rybas's fall is far from overwhelming.  Plaintiffs' proof is based in large part on testimony from one witness.").  *See also Frostbutter*, 2013 WL 4026985, at *7 ("Plaintiff has introduced a theory of causation and supported it with some specific facts.  Therefore, summary judgment will not be granted on the grounds that Plaintiff's causation evidence is purely speculative.").

Defendants primarily rely on *Marchant v. Boddie-Noell Enterprises, Inc.*, 344 F. Supp. 2d 495 (W.D. Va. 2004), to support their argument that Ms. Schneider's uncertainty as to what caused her to fall warrants summary judgment in their favor.  In *Marchant*, the plaintiff, Mr. Marchant, brought a negligence action against a restaurant for injuries suffered when he slipped and fell on the restaurant's sidewalk.  *See id.* at 496.  Mr. Marchant testified during his deposition that he did not know what caused him to fall, but that he had observed missing sidewalk tiles and a protruding pipe when he visited the restaurant a week later.  *Id.* at 498.  The court found that the record supported only a speculative possibility that the sidewalk defects caused Mr. Marchant's fall, and granted summary judgment to the defendant.  *See id.* at 499.

However, *Marchant* is distinguishable from the case at bar in at least one glaring respect: although Ms. Schneider may not be able to recall exactly how or why she fell, she *does* recall the presence of the dangerous conditions that she alleges caused her to fall.  By contrast, Mr. Marchant had no recollection of the sidewalk defects prior to his fall, but only discovered them after visiting the site a week later.  The difference in probative value between Mr. Marchant's post-facto discovery and Ms. Schneider's prior recollection is what distinguishes a speculative possibility from a reasonable probability of causation.  While this Court takes note of

Defendants' contention that Ms. Schneider's reference to a "wet" substance post-dates her Complaint, in this case, the sufficiency of Ms. Schneider's evidence does not hinge on the presence or absence of this particular fact.  As discussed above, it is enough that Ms. Schneider alleges that the surface of the Display Boat was slippery; whether or not the surface was actually wet is a question of fact for the jury.

That Defendants can offer an alternative theory of causation only demonstrates that there is a genuine dispute over what, as a matter of fact, caused Ms. Schneider to slip and fall.  The factual questions that underlie this dispute—was Ms. Schneider on the stairs or on the platform when she fell?  Was the surface of the boat slippery, and if so, was that due to the presence of liquid?  Did the fact that Ms. Schneider took a Percocet at 4:00 AM affect her coordination and balance?—are precisely the kinds of questions entrusted to the jury to resolve in negligence cases.  *See, e.g.*, *Maans v. Giant of Maryland*, LLC, 161 Md. App. 620, 629–30, 871 A.2d 627, 632 (2005) (finding that, despite the existence of an alternative explanation for the plaintiff's fall, a fact-finder was entitled to find that the alleged cause, rather than the alternative proffered by the defendant, was the reason for the plaintiff's slip and fall).  *See also Rybas*, 21 F. Supp. 3d at 565 (noting that, while plaintiff conceded that she was "[n]ot exactly" sure what caused her fall, "it is the province of the fact-finder to resolve genuine disputes as to causation").

In sum, Ms. Schneider has produced enough evidence for a reasonable jury to conclude that her fall was caused by the presence of dangerous conditions aboard the Display Boat, and Defendants have not made a sufficient showing for this Court to rule that, as a matter of law, Ms. Schneider did not slip and fall as a direct result of Defendants' negligence.

### ii. Knowledge of Dangerous Conditions

Defendants argue that, even if Ms. Schneider fell on a slippery or wet surface, she has not offered any proof that they had actual or constructive knowledge of the hazardous conditions.[3] The Court is not persuaded that summary judgment in Defendants' favor is warranted based on a lack of evidence of knowledge. For one, it is undisputed that Ed's Marine installed the Display Boat and inspected it "prior to the [Boat Show's] start on each day." Pl. Opp. 8; Exh. D [Ed's Marine's Resp. to Pl.'s Interrog. No. 9]. Ms. Schneider also claims that NMMA was responsible for further inspecting and certifying each exhibit, and Defendants do not dispute this factual averment. *See* Pl. Opp. 12. This is sufficient evidence for a reasonable jury to conclude that, at some point during the installation, inspection, and certification process, Defendants created, became aware, or should have become aware, of the dangers associated with boarding the Display Boat.

This result is consistent with the Fourth Circuit's approach in *Konka v. Wal-Mart Stores, Inc.*, 133 F.3d 915 (Table), 1998 WL 24378, at *1 (4th Cir. 1998) (unpublished per curiam opinion). In *Konka*, the plaintiff, Ms. Konka, filed suit after falling in the covered patio area just outside of a Wal-Mart store. *Id.* Despite heavy rain, the doors to the patio area were open, and Ms. Konka's husband observed that the tile floor was "shiny and wet." *Id.* at *4. Ms. Konka later stated that after she fell, "her clothes got wet from being on the floor," and that "an unidentified Wal-Mart employee came over to see if she was injured and allegedly told [her] that the floor 'should have been mopped.'" *Id.* The Fourth Circuit found that "sufficient evidence

---

[3] According to Defendants, Ms. Schneider's lack of proof as to knowledge cannot establish "legally cognizable" causation. However, knowledge is not an element of the proximate cause inquiry; rather, courts ask "whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected." *Pittway Corp. v. Collins*, 409 Md. 218, 245, 973 A.2d 771, 787 (2009). Defendants do not address the foreseeability of risks associated with the dangerous conditions aboard the Display Boat in their Motion, and thus they have *de facto* failed to make the required showing that there is no genuine dispute as to the issue of "legally cognizable" causation. Defendants' arguments as to actual and constructive knowledge, such as they are, are more appropriately directed to the question of breach.

was presented for a jury to have reasonably concluded either that the wet spot was 'placed' there by Wal-Mart because rain water blew in through the open door, or that some employee did have a special duty to observe the area and watch for hazards." *Konka*, 1998 WL 24378, at *4. The court also found that, in the alternative, a reasonable jury could have concluded that Wal-Mart was "on constructive notice of the wet and hazardous condition," given that two employees who were responsible for maintaining that area should have been aware that it was raining heavily outside, and that the door to the patio was open. *Id.* Thus, because a reasonable jury could have found "that [Wal-Mart] either created the dangerous condition or had constructive knowledge of it," the Fourth Circuit affirmed the trial court's decision denying Wal-Mart's motions for judgment as a matter of law. *Id.*

In the end, a reasonable jury may well find that the record does not support Ms. Schneider's claim that Defendants had actual knowledge of the dangerous conditions aboard the Display Boat, whether or not those conditions included a "wet" substance on the boat's surface. A reasonable jury may also find that the conditions, such as they were, did not persist long enough to charge Defendants with constructive knowledge. Nevertheless, these determinations turn on disputed facts concerning the precise nature of the conditions aboard the boat, the scope of Defendants' knowledge about those conditions, and the reasonableness of their conduct in permitting the conditions to exist without warning. It would be improper for this Court to supplant the role of the jury in resolving these disputes. *See Konka*, 1998 WL 24378, at *3 ("Whether [the defendant] was reasonable in failing to discover a hazardous condition is a question of fact, which requires a consideration of the nature of the condition, its foreseeable consequences, the means and opportunities of discovering it, the diligence required to discover and correct it, and the foresight which a person of ordinary prudence would have exercised under similar circumstances.").

15

### iii.  Affirmative Defenses

Finally, Defendants argue that they are entitled to summary judgment on their affirmative defenses of contributory negligence and assumption of risk, based on evidence that Ms. Schneider: (1) failed to use due care to avoid dangers that she knew existed by virtue of her prior experience, and (2) voluntarily encountered known dangers that were open and obvious at the time of the incident.  However, Maryland courts typically reserve questions regarding affirmative defenses for the jury.  *See, e.g.*, *Kasten Construction Co. v. Evans,* 260 Md. 536, 541, 273 A.2d 90, 93 (1971) ("Contributory negligence, like assumption of risk, is ordinarily a question for the jury.").  For the court to find for the defendant on a defense of contributory negligence, the plaintiff's action "must be distinct, prominent and decisive, and one about which reasonable minds would not differ in declaring it to be [contributory] negligence."  *Miller v. Mullenix*, 227 Md. 229, 232, 176 A.2d 203, 204 (1961).  Similarly for assumption of risk, the issue is for the court "when it is clear that a person of normal intelligence in the position of the plaintiff must have understood the danger."  *Schroyer v. McNeal*, 323 Md. 275, 283–84, 592 A.2d 1119, 1123 (1991).

Here, the viability of Defendants' theories depends on the existence of certain material facts not yet resolved or adduced.  For example, Defendants argue that, because Ms. Schneider observed snow flurries before entering the Convention Center, "[a]ny reasonable person would know or should know of the possibility of wet conditions," and, in the exercise of ordinary care for her safety, "would . . . take the proper precautions to observe where [she was] stepping." Defs. Mot. 19.  But, what a reasonable person would or should know, and the extent to which Ms. Schneider's conduct conformed to that expectation, would likely require additional facts, as well as a chain of inferences leading to the conclusion that it was Ms. Schneider, rather than Defendants, who failed to exercise ordinary care in not anticipating and guarding against slippery

conditions.  Accordingly, "[w]here there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom, the question should be submitted to the jury."  *Reiser v. Abramson*, 264 Md. 372, 378, 286 A.2d 91, 93 (1972).  *See also Eagle-Picher Indus., Inc. v. Balbos*, 326 Md. 179, 220, 604 A.2d 445, 464–65 (1992) ("Usually inquiries into the reasonableness of conduct are the province of the jury rather than of the court.")

As for Defendants' assumption of risk defense, many of the same disputed facts are at issue.  For instance, whether or not the "slippery" surface of the Display Boat was "open and obvious" may very well depend on whether the surface was, in fact, wet—a fact which has not been firmly established.  Moreover, the record is inconclusive as to whether Ms. Schneider was actually aware that the surface was slippery before she fell, and the question of whether she should have been aware hinges, again, on a determination of whether the conditions aboard the Display Boat presented an "unreasonable risk" of injury.  This Court cannot conclusively answer that question based on the current record, and Ms. Schneider is entitled to have a jury weigh testimony on these matters.  *See Schroyer*, 323 Md. at 283 ("The test of whether the plaintiff knows of, and appreciates, the risk involved in a particular situation is an objective one and ordinarily is a question to be resolved by the jury.").  Accordingly, granting summary judgment to Defendants would be improper.

## IV.  Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment [ECF No. 24] is denied.  A separate Order follows.


Dated:  July 17, 2015

                                                                    /s/
                                                  _____
                                                  Stephanie A. Gallagher
                                                  United States Magistrate Judge